# FITZGERALD v. WOOD et al.

## KLINKE v. WOOD et al.—238 S. W. (2d) 103.

Western Division at Jackson.   May 22, 1950.

Petition for Certiorari denied by Supreme Court, October 9, 1950.

John R. Gilliland, D. D. Canale, both of Memphis, for plaintiffs in error.

Burch, Porter & Johnson, of Memphis, for defendants in error.

SWEPSTON, J. These two suits were tried together to a jury. There was a peremptory instruction in favor of defendant Wood and wife at the close of all the evidence. Plaintiffs' motions for new trial were seasonably made and overruled and they have appealed and assigned error.

We shall refer to the several parties herein as plaintiff and defendant.

The question posed by the second assignment is in our opinion determinative of the case. It is that the trial judge was in error in directing a verdict for defendant on the ground that the undisputed evidence showed that the ambulance belonging to defendant was not being used at the time of the accident on the business of the master.

■ In reviewing the evidence for the purpose of this assignment we are bound to take as true all evidence and reasonable inferences therefrom as are favorable to plaintiff giving it the strongest legitimate effect to uphold the verdict and discarding all countervailing evidence and inferences therefrom.

McConnell v. Jones, Tenn. App., 228 S. W. (2d) 117.

The accident occurred August 4, 1948 about 9:30 at night at the intersection of Cleveland Street and Union Avenue, Memphis, when the ambulance of defendant collided with an automobile being driven by one of the plaintiffs and occupied by the other plaintiff.

■ There was evidence tending to show the following:

Defendant is a resident of the State of Alabama and never lived in Memphis and at all times since he acquired an undertaking business in Memphis a year or so before the accident he had the business in charge of a local manager and visited here about once a month.

Russell Kauerz had been an employee prior to July 1948, at which time he became manager, succeeding one Shoeffner, and was the manager during the period of this accident.

Defendant left the operation of the business to the manager.

About 9:00 on the evening of the accident a telephone call for an ambulance came in.

There is circumstantial evidence that the manager authorized one Tierce, a regular employee to answer the

call and to take with him as an assistant a casual visitor, Blann; two men are required to handle a stretcher; it was a customary part of the manager's duties to go with the ambulance but he remained at the office.

The business was located at 972 Popular Avenue. The call came from a Negro section about two miles northwest of the office. When the ambulance arrived at the place of call they found that the injured person, a Negro, had already been taken away. Instead of returning at once by a reasonably direct route to the office, these men started off to get some barbecue sandwiches for themselves and for the manager's family; the testimony is that there had been discussion of this at the funeral parlor with the manager before the ambulance went out. The manager and his family lived upstairs and had several visitors at the time.

Tierce drove eastward past the vicinity of the office when he became confused and lost his bearings, so at the request of Tierce the other man, Blann, took the wheel. These two had been discussing the food question as they drove along and it was agreed they would drive to Leonard's stand which is located several miles south and east of the funeral parlor.

Blann took over and met with the accident at a point several blocks south and east of the office, before reaching the barbecue stand.

The evidence further is that Tierce was on duty twenty-four hours a day but no living quarters nor eating facilities were provided for him; that he usually obtained his meals in the daytime within a block of the office and that his wife brought him food at night; that employees could eat wherever they desired; that Tierce had never used the ambulance to go for meals or food,

but that he had known of other employees doing so; that kitchen facilities were provided for the manager and his family along with living quarters in the building where the funeral parlor was operated.

The trial judge was of opinion that this evidence showed that the ambulance was not being operated on the business of the defendant.

We hold the same view.

■ The general rule is that the owner of a motor vehicle is not liable under respondeat superior for the acts of another who is driving it, unless it is being used on the business of the owner; and likewise when initially it was being used on the business of the owner, but at the time of the accident the servant or agent has turned aside from or abandoned the affairs of the owner and is using entirely for his own business or pleasure. 60 C. J. S., Motor Vehicles, Section 437, p. 1093.

■ The general rule as applied to the specific subject of the servant's use of the master's vehicle in going to and from meals, or to and from home and work, is variously phrased in the following texts in addition to the above: 42 C. J. 1108, sec. 868; 5 Am. Jur. 718, sec. 379 & sup. pp. 109-110; Restatement of Agency, Vol. I, sec. 229(d).

The gist of the matter is that the solution of the problem depends on the facts and circumstances of each case and unless there is some fact or circumstance indicating a benefit to the owner, the use is regarded as being for the personal benefit of the servant alone, in which event the master is not liable for the acts of the servant; if the facts indicate, however, that the use of the vehicle enables the servant to arrive earlier or remain longer at his work, or to shorten the time of

his absence for meals or a particular meal, or the deviation for that purpose was slight, or that the use of the vehicle for such purpose is part of the contract or is customarily furnished, or any other special fact or facts from which a benefit to the master may be inferred, then the court or jury may find it to be within the scope of employment.

Ely et al. v. Rice Bros. et al., 26 Tenn. App. 19, 167 S. W. (2d) 355 (master obligated by contract to provide car and gasoline); Hall Grocery Co. v. Wall., 13 Tenn. App. 203 (driver to knowledge of owner customarily drove truck home at night) Desoto Garage Operating Co. v. J. Thomas Wellford, admstr., unreported Tenn. App. July 12, 1924 (night manager in sale charge sent company pickup servant for part for manager's car in the usual course of business and keeping of car in repair for use by manager in going to and from work was admitted by master to be beneficial to business.) Barker v. Elder, 20 Tenn. App. 251, 97 S. W. (2d) 654 (going for a meal held not beneficial to master.)

In the instant case it is contended that since Tierce was on twenty-four hour duty and no eating facilities were provided at the place of business, the jury could infer a benefit to the master in the saving of time by using the ambulance to go for food and return quickly to answer ambulance calls.

It seems an obvious answer is that Tierce had never found it necessary or desirable previously to so use the ambulance; he said he ate his regular meals within a block away and his wife brought him food at night; this was a single occasion and long past regular mealtime for him and all the others.

There is no evidence whatever to indicate that he or the manager expressed or indicated in any manner that

any effort was made or desired to save time or expedite his return; had there been, time would have been saved by his stopping on the proper return route, or by going to his usual place within the block instead of starting out to a stand several miles away; and as concerns the manager and his family, they had kitchen facilities in the building housing the business.

We overrule the assignment.

Since this is determinative of the whole case, it is unnecessary to discuss the other secondary questions raised.

The judgment below is affirmed and costs are taxed against plaintiffs.

Anderson, P. J., and Baptist, J., concur.