LEEPER HARDWARE COMPANY, Inc., and WAYNE
E. BROWN v. KENNY KIRK, b/n/f J. E. KIRK, and
J. E. KIRK.—434 S.W.(2d) 620.

Eastern Section. July 2, 1968.

Certiorari Denied October 7, 1968.

550

W. H. Inman, Morristown, J. Brice Wisecarver, Jefferson City, for plaintiff-in-error, Leeper Hardware Company, Inc.

C. S. Rainwater, Jr., Dandridge, for plaintiff-in-error, Wayne E. Brown.

Franklin Park, Jefferson City, for defendants-in-error, Kenny Kirk and J. E. Kirk.

COOPER, J. These suits arose out of an automobile-motorcycle collision which occurred on Mount Horeb Road in Jefferson County, Tennessee, on August 25, 1966. Kenny Kirk, who was riding the motorcycle, brought suit to recover damages for personal injuries sustained in the accident. His father, J. E. Kirk, sued to recover for loss of his son's services and to recover the expenses incurred in providing needed medical treatment for his son. The defendants were Wayne E. Brown, the owner and driver of the automobile involved in the accident, and the Leeper Hardware Company, Inc., the employer of Brown.

The defendants insist that there is no evidence to support the trial judge's finding that Wayne E. Brown was guilty of negligence that proximately caused the accident and resulting injuries and damages or (2) his finding that Wayne Brown was operating the automobile on the business of his employer, the defendant hardware company, at the time the accident occurred. The defendant Brown also insists that the trial judge erred in failing to enter judgment for the defendant, on motion, on plaintiffs' failure "to properly and timely plead to defendant's special plea" and in permitting plaintiffs' to file their replication to the special pleas after trial had begun.

As to the latter assignment, the trial court has the authority to extend the time in which a plea can be filed and to "excuse the failure to plead within the time prescribed, upon good cause shown." T.C.A. 20-711. Defendant Brown filed his special pleas on July 17, 1967. So far as the record shows, no copy of the pleas was forwarded to plaintiffs' counsel by either defense counsel or the circuit court clerk as required by T.C.A. Sections 20-714 and 20-715. The court file, including defendant Brown's special pleas, was withdrawn from the clerk's office by counsel for the defendant hardware company on July 18, 1967, and was in counsel's possession until the day of trial. At the trial, plaintiff's counsel objected to the reading of the special plea to the jury, expressing surprise that it had been filed; and moved to strike the plea on the ground that defendant had not been requested to plea specially. The trial judge overruled the motion to strike and permitted the special plea to be read to the jury. A witness was called and sworn. Defendant then sought to "call out" the plaintiffs and moved to dismiss the suits for failure of plaintiffs to file a replication to

the special pleas. See Ryder Truck Rental, Inc. v. Phipps, 213 Tenn. 465, 374 S.W.2d 402. The trial judge denied defendant's motion and permitted plaintiffs to file a replication which, in effect, did no more than deny the allegations of the special pleas. We think the trial court's action was proper and was within the authority granted him by T.C.A. 20-711. The plaintiff had no knowledge of the filing of the special pleas prior to trial, and his lack of knowledge was due, at least in part, to the failure of defense counsel to forward him a copy of the special pleas.

The only witnesses to the accident were the plaintiff Kenny Kirk and the defendant Wayne Brown. Testimony of the other witnesses was limited to a description of physical evidence and to statements made by the parties.

The accident occurred in a blind curve on Mt. Horeb Road. The road at this point was paved and was two lanes in width. The south half of the highway, which was the lane for eastbound traffic, was partly covered with lime dust that had fallen from trucks hauling lime from nearby mines.

The plaintiff, Kenny Kirk, who was 14 years of age at the time the accident occurred, testified he was travelling in a westwardly direction on Mt. Horeb Road and approached the blind curve at a speed of 15 to 20 miles per hour; that on entering the curve, his motorcycle was in the proper lane for westbound traffic and was within two feet of the edge of the highway. According to the plaintiff, he first saw the defendant Brown's automobile as it came out of the curve toward him and that at that time it was on the wrong side of the highway and was moving at a speed of 50 to 60 miles per hour. Plaintiff

testified he brought his motorcycle to a stop or to a "near" stop with the motorcycle angled toward the edge of the highway, put his foot on the pavement to keep the motorcycle upright, and attempted to get the motorcycle off the highway. The defendant turned his automobile sharply to the right in an effort to avoid striking plaintiff's motorcycle. This, according to the plaintiff, caused the automobile to skid at an angle into the side of the motorcycle, the point of contact on the motorcycle being in the area of the "foot pedal" and the damage to the automobile being confined to the left door and the front edge of the left rear quarter panel. There was no damage to the front of either vehicle.

Lloyd McKenzie, a Tennessee highway patrolman, testified he arrived at the scene of the accident some 45 minutes after it occurred and after Brown had driven plaintiff to the hospital. The officer found a "cut" in the highway on plaintiff's side of the road, and saw the motorcycle off the highway nearby. The officer, in order to complete his investigation, had Brown return to the scene of the accident. According to the officer, Brown pointed out the place where plaintiff was lying after the accident and also pointed out the path taken by the Brown automobile. The "cut" in the pavement, the location of the motorcycle, plaintiff's position on the shoulder of the road after the accident, and the path taken by the Brown automobile were indicated by the officer on a photograph of the accident scene.

Several members of plaintiff's family testified that they discussed the accident and its cause with the defendant Brown at the hospital. The consensus of their testimony was that Brown told them "he was going to get a lawnmower for Mr. Leeper," and was "kind of

in the middle of the road." Mrs. J. E. Kirk, the mother of the plaintiff, testified that Brown explained he was trying to avoid the limedust that was on the highway.

Defendant Brown, in his testimony, placed the vehicle on his side of the highway at the moment of impact. Brown testified that he entered the curve on his proper side of the highway at a speed of 35 to 40 miles per hour; that as he neared the apex of the curve, he noticed plaintiff's motorcycle eighteen to twenty feet away "right in the middle" of the roadway; that he saw the vehicles were going to collide and turned sharply to the right to avoid the collision, but that plaintiff appeared to lose control of his motorcycle and drove it into the side of the automobile. Brown denied telling any member of the Kirk family that his automobile was in the middle of the roadway, or that he was trying to avoid driving in the limedust.

■ With the evidence in this state, the trial judge accepted the plaintiff's version of the accident and found that defendant Brown was guilty of negligence which proximately caused the accident and the resulting injuries. In doing so, the trial judge emphasized that Kenny Kirk impressed him "as being a very fine witness," and that his testimony was corroborated by the testimony of Patrolman McKenzie and by statements made by the defendant to the Kirk family and to the patrolman. We find no valid basis in the record to challenge the trial judge's finding on the issues of negligence, proximate cause and contributory negligence. To the contrary, we are of the opinion that the trial judge's findings are in accord with the preponderance of evidence in this cause.

■■ On the issue of agency, in order to hold an employer responsible for the acts of an employee, "it is

necessary to show that the relationship of master and servant exists between the wrong-doer and the defendant [employer] at the time and in respect of the very transaction out-of which the injury arose. The mere fact that the driver of the vehicle causing the injury was the defendant's servant will not make the defendant liable. It must be further shown that at the time of the accident the driver was on the master's business and acting within the scope of his employment." Midwest Dairy Products Co. v. Esso Standard Oil Co., 193 Tenn. 553, 246 S.W.2d 974.

■ "No hard and fast rule can be laid down by which it would be possible to determine in every instance whether the driver of a motor vehicle, in the general employ of another, was acting within the scope of his employment at a given time, but rather each case is to be decided largely upon its own facts, merely keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer, or while about his business." 5 Blashfield Cyclopedia of Automobile Law and Practice, sec. 3006, p. 287. See also Fitzgerald v. Wood, 34 Tenn.App. 345, 238 S.W.2d 103.

In this case the evidence shows that Brown was employed by the defendant hardware company as a general handyman. Brown's usual workday was from 7:30 A.M. to 5:30 P.M., with an hour for lunch. The lunch-period taken by Brown was irregular, the time being dictated by the press of the store's business. Brown, on occasion, ate his lunch at his home which was located some five miles from the store. There were several routes Brown could take in going from the hardware store to his home. One route—the Mt. Horeb Road—passed by the residence of Mr. R. J. Leeper, president of the defendant hardware company.

On the day of the accident Mr. Leeper, learning that Brown planned to go to his home for lunch, instructed Brown to take a company truck and pick up a lawnmower at the Leeper home, to take it to the Southern Terrace Subdivision near Jefferson City, and to use it in mowing the lawn of a house owned by the defendant hardware company. Brown had mowed the lawn on other occasions, but had not picked up the lawnmower at the Leeper home.

Brown reported to Mr. Leeper that the company truck was being used by another employee, and Mr. Leeper then authorized Brown to use his (Brown's) personal automobile to pick up and transport the lawnmower.

On leaving the hardware store, Brown stopped at a grocery store and purchased two cans of sardines and a fried pie for his lunch. Brown then drove east on Mt. Horeb Road toward the Leeper home and toward his home. The collision giving rise to these suits occurred before Brown reached the Leeper home.

We then have a situation where Brown was, at least in part, on a mission for the defendant hardware company at the time the accident occurred. The mission was one within the bounds of Brown's duties as a general handyman, and was one that Brown was directly instructed to perform by his employer. It is true there is evidence that Brown was partially serving his own purpose in driving on Mt. Horeb Road, in that he intended to eat lunch while on the trip, but this does not necessarily place Brown "beyond the scope of his employment," nor does it relieve the defendant hardware company from liability for Brown's negligence in operating the automobile on the trip. 60 C.J.S. Motor Vehicles sec. 453, p. 1160; Restatement of Agency 2d, sec. 236, p. 523.

▌ "The test in brief is this: If the work of the employer creates the necessity for travel, [the employee] is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it." Blashfield Cyclopedia of Automobile Law and Practice, sec. 3034, pp. 374-375, and cases there cited. See also Webster v. Mountain States Telephone and Telegraph Co., 108 Mont. 188, 89 P.2d 602; Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183; Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131 N.E. 914.

In this case, the work of the employee Brown created the necessity for Brown to drive a motor vehicle from the hardware store to the Leeper home. The trip would have been made, even though Brown had chosen to eat his lunch at some place other than his home or had chosen not to eat lunch at all.

▌ We find from the evidence in this cause, as did the trial judge, that Brown was acting within the scope of his employment and was on the business of his employer at the time the accident occurred and that, as a consequence, the defendant hardware company is liable for damages resulting from Brown's negligence.

Judgments affirmed. Costs are adjudged against the defendants and their sureties.

McAmis, P. J., and Parrott, J., concur.