Randolph J. PROVOST, husband of Edith Andree Provost, deceased

v.

Janie W. SMITH and James O. Smith.

Janie W. SMITH; James O. Smith; and Jennifer Smith, a minor by father and next friend, James O. Smith, Cross-Plaintiffs,

v.

Randolph J. PROVOST and the United States of America, Cross-Defendants.

Randolph J. PROVOST

v.

Janie W. SMITH and James O. Smith.

Randolph Jay PROVOST b/n/f and father, Randolph J. Provost

v.

Janie W. SMITH and James O. Smith.

Civ. A. Nos. 5347–5349.

United States District Court
E. D. Tennessee, S. D.

Oct. 30, 1969.

Ray Siener, Jay B. Stringer and Hunt & Bell, Chattanooga, Tenn., for Randolph J. Provost.

Dan Massey, Chattanooga, Tenn., for Smiths as defendants and cross-plaintiffs.

John L. Bowers, Jr., Edward E. Wilson, Asst. U. S. Atty., Chattanooga, Tenn., for United States.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FRANK W. WILSON, District Judge.

These are actions and cross-actions for personal injuries and property damage arising out of a motor vehicle accident. In Civil Action No. 5347 Randolph Provost seeks to recover for the alleged wrongful death of his wife Edith Andree Provost. By cross-action in the same case, Janie W. Smith, James O. Smith, and Jennifer Smith seek to recover from Randolph Provost for personal injuries and property damage alleged to have been sustained in the accident. The United States of America is joined as a party defendant in this cross-action, the cross-plaintiffs contending in the alternative that the United States would be responsible under the Federal Tort Claims Act for the actions of Randolph Provost in the operation of his automobile at the time of the accident. In Civil Action No. 5348 Randolph Provost seeks to recover for expenses incurred and loss of services as a result of injuries to his wife and children and for damage to his automobile. In Civil Action No. 5349 Randolph Jay Provost, the minor son of Randolph Provost, seeks to recover for personal injuries sustained in the accident. The cases were consolidated for trial. The parties entered a stipulation waiving trial by a jury and the cases were tried by the Court sitting without a jury. The Court makes the following findings of fact and conclusions of law based upon the record made in the trial of the cases.

### Findings of Fact

(1) Randolph Provost is the surviving husband of Edith Andree Provost and the father of Randolph Jay Provost, a minor. Both Randolph Provost and his son, Randolph Jay Provost, are citizens and residents of Aberdeen, Maryland. James O. Smith and Janie W. Smith are husband and wife and are the parents of Jennifer Smith, a minor. The Smiths are each citizens and residents of Eto-

wah, Tennessee. The amount in controversy is in excess of $10,000.00.

(2) On or about March 13, 1968, at approximately 1:10 a. m. a motor vehicle accident occurred on U. S. Highway No. 41 at a point approximately three miles north of the Chattanooga, Tennessee, city limits. Involved in the accident was a 1964 Pontiac owned and being operated at the time by Randolph Provost. Riding as guests in the Provost vehicle were Edith Provost, the wife of Randolph Provost, and four minor sons of Randolph Provost, including Randolph Jay Provost. Also involved in the accident was a 1964 Chevrolet automobile owned by James O. Smith and being operated at the time by his wife, Janie W. Smith. Riding as a guest and passenger in the Smith automobile was Jennifer Smith, the minor daughter of James O. Smith and Janie W. Smith. Prior to the accident the Pontiac automobile being driven by Randolph Provost was proceeding in a southerly direction upon U. S. Highway 41 and the Chevrolet operated by Janie W. Smith was proceeding in a northerly direction upon U. S. Highway 41. The 1964 Chevrolet driven by Janie W. Smith was a family purpose automobile and was accordingly being driven under circumstances whereby James O. Smith, the husband of Janie W. Smith, would be responsible for the manner of her operation of the vehicle. At the time of the accident Randolph Provost was a sergeant in the United States Army en route to his post of duty at Fort Gordon, Georgia. Edith Provost, who was 26 years of age at the time of the accident, died instantly of injuries received in the accident.

(3) The highway at the scene of the accident was a two-lane blacktop highway, having one lane for southbound traffic and one lane for northbound traffic. Located upon the east side of the highway was a gasoline service station. Located upon the opposite side of the highway was the Tennessee Highway Patrol Office. The highway in this area is approximately straight for some distance in each direction from the service station, but the roadway is rather rolling. Visibility on the highway in the area of the gasoline service station is good for a distance of some 1,000 to 1200 feet in either direction. The service station entrance itself is paved for some 380 feet along the east side of the highway, the paved service station apron being on the approximate level of the highway.

(4) Some distance before approaching the entrance to the gasoline service station, Sgt. Provost had noticed a sign advertising that the station would be the last opportunity to purchase gasoline before entering upon the interstate highway and had concluded that he would stop at the station to purchase gasoline. As the service station came within his view, and while he was still some 400 to 500 feet from the entrance to the station, Sgt. Provost turned his left turn signal indicator on. At this same time Mrs. Smith and her daughter, Jennifer Smith, were approaching the area of the service station from the opposite direction, following a tractor-trailer truck which was also travelling in a northerly direction. The tractor-trailer truck turned to its right into the south end of the service station. Meanwhile, Sgt. Provost, having approached the entrance at the north end of the service station, slowed his automobile to 20 or 25 miles per hour in preparation for turning left into the station. Seeing the tractor-trailer truck turn into the station, but not seeing Mrs. Smith approaching from the opposite direction, Sgt. Provost commenced his turn into the station. It would appear from a preponderance of the evidence that Mrs. Smith was at that time within 100 or 200 feet of Sgt. Provost's automobile as he commenced his turn into the station, she approaching at 40 to 45 miles per hour as he was approaching and making his turn at 20 to 25 miles per hour. The posted speed limit along the highway in this area was 45 miles per hour. Sgt. Provost did not see Mrs. Smith approaching until he was committed to his turn with the result that his only evasive action was to at-

tempt to speed up and turn more sharply into the station. Upon seeing Sgt. Provost making his turn in front of her, Mrs. Smith applied her brakes, skidded some 50 to 80 feet and cut to her right to avoid the accident. The automobiles collided, however, in the entrance to the service station at or just off of the east edge of the highway. The left front of Mrs. Smith's car collided with the right side of Sgt. Provost's automobile and the vehicles came to rest at or near the point of impact.

(5) Mrs. Provost, who was seated in the right front seat of the Provost automobile, was killed instantly in the accident. Her funeral expenses totaled $1245.61. She was a mother and a housewife in apparent good health prior to the accident.

(6) All four of the Provost children riding in the automobile received injuries in the accident, but the injuries of three of the children were of a temporary nature. Randolph Jay Provost, presently aged seven, who was sitting on the right rear seat, received the more serious injuries. He received multiple cuts on the forehead, a nasal fracture, a contusion of the right chest, and a fracture of the femur in the right leg. In addition, he was believed to have injuries causing internal bleeding and an exploratory operation was performed. This operation, however, proved to be negative for any internal bleeding. He was hospitalized for a month and a half and in a cast of one type or another for some three months. Thereafter his activities appear to have been restricted for some four or five months additional. At the time of the trial he appeared to have recovered from all of his injuries with the exception of lightly visible scars on his forehead and with the exception of a 5% permanent partial disability as a result of the fracture to his right leg.

(7) Sgt. Provost, in addition to the funeral expenses of $1245.61, incurred by reason of the death of his wife, also incurred medical expenses in the treatment of his children in the total sum of $2416.75 (Exhibit No. 1). In addition, he sustained property damage to his automobile in the sum of $2,000.00.

(8) The principal injury received by Mrs. Smith in the accident was a one-inch laceration across her nose which required some 17 stitches to suture. She suffered contusions and abrasions about the face and eyes and a sprained ankle. She was able to return to her normal duties within two to four weeks. Although she was not hospitalized for her injuries at the time of the accident, in September of 1968 she was hospitalized for four days for plastic surgery to remove discoloration caused by bloodclots underneath one eye, the clots having been caused in the accident.

(9) Jennifer Smith was thrown into the windshield in the accident and her principal injuries consisted of multiple lacerations in the area of the forehead. These lacerations required multiple sutures for their repair and Miss Smith was hospitalized for four days as a result of her injuries. The week following the accident she was able to return to school, but in September of 1968 she was again hospitalized for four days for further plastic surgery to reduce the facial scars. It appears that she will have a minimal amount of scarring about the eyes and forehead and that this will be of a permanent nature as a result of the accident.

(10) The exact amount of medical expenses incurred by Mr. Smith in the care and treatment of his wife and daughter as a result of injuries received in the accident is not altogether clear in the record, but it appears that he incurred medical and hospital expense for the care and treatment of his wife in the sum of $527.33, and that he incurred medical and hospital expense for the care and treatment of his daughter in the sum of $733.90. The evidence further reflects that Mr. Smith sustained property damage to his automobile in the sum of $1,000.00 and that his wife

and daughter's clothing was damaged to the extent of approximately $200.00.

(11) With respect to the cross-action by the Smiths against the United States under the Federal Tort Claims Act and with regard to the issue of whether Randolph Provost was within the course and scope of his employment as a member of the military forces of the United States at the time and place of the accident, the relevant facts are as follows: At the time of the accident Randolph Provost was a member of the United States Army on active duty. He held the rank of sergeant. For a period of some three years, from 1965 until January of 1968, he was stationed with his family in Germany. In January of 1968 he was reassigned from foreign service to Fort Gordon, Georgia, by orders dated January 18, 1968. Sgt. Provost flew from Europe with his family to McGuire Air Force Base near Trenton, New Jersey, arriving there on February 13, 1968. In accordance with his orders, he was authorized to take 30 days leave upon his arrival at McGuire Air Force Base, and in addition was authorized one day's travel time from McGuire Air Force Base to Fort Gordon, Georgia, thus being scheduled to report at Fort Gordon, Georgia, for duty on the morning of March 15, 1968. Sgt. Provost's military orders authorized him to use his private automobile for transportation from McGuire Air Force Base to Fort Gordon and provided that he should be compensated at the rate of six cents per mile for a distance of 705 miles, the authorized mileage between McGuire Air Force Base and Fort Gordon. Departing with his family in his private automobile from McGuire Air Force Base on February 14, 1968, Sgt. Provost drove to Aberdeen, Maryland, where he visited with his wife's relatives for a period of two weeks. He then drove with his family to Anoka, Minnesota, where he visited another two weeks with his own relatives. On March 11, 1968, Sgt. Provost left Anoka, Minnesota, with his family to begin his trip to Fort Gordon, Georgia. He drove in a direct route from Anoka, Minnesota, toward Fort Gordon, near Augusta, Georgia, and by 1:00 p. m. on March 13, 1969, had arrived at the point where the accident occurred near Chattanooga, Tennessee. The point of the accident was some 274 miles from his destination at Fort Gordon, Georgia. Sgt. Provost had intended to arrive at Fort Gordon either upon March 13 or March 14, as circumstances would permit. The direct route from McGuire Air Force Base, near Trenton, New Jersey, to Fort Gordon, near Augusta, Georgia, would have led through the states of Virginia, North Carolina, and South Carolina to Augusta, Georgia. Chattanooga, Tennessee, is some 260 miles west of the nearest point on this direct route between McGuire Air Force Base and Fort Gordon, Augusta, Georgia, being the point at which Sgt. Provost would have rejoined the direct route. As a matter of geography, the direct route from McGuire Air Force Base approaches Fort Gordon from the northeast. The route being followed by Sgt. Provost at the time of the accident approaches Fort Gordon from the northwest.

*Conclusions of Law*

(1) This Court has jurisdiction of the parties and of these causes of action, there being diversity of citizenship between the individual parties plaintiff and the individual parties defendant and the jurisdictional amount being involved, and the Court having jurisdiction of the claim against the United States under the Federal Tort Claims Act (28 U.S.C. § 1346(b) and § 2671 et seq.).

(2) The plaintiff and cross-defendant, Randolph Provost, was guilty of negligence proximately causing the accident here involved in that (a) he failed to keep a proper lookout for vehicles approaching in the opposite direction as he prepared to make a left turn into the automobile service station; (b) he made a left turn at a time when the Smith automobile was in such close proximity as to create an immediate hazard and accordingly would have been

entitled to the right-of-way under the circumstances shown in the evidence; and (c) in that he operated his automobile in violation of T.C.A. § 59–842 regulating the making of left turns upon the highway.

(3) The defendant and cross-plaintiff, Janie W. Smith, was not guilty of any negligence proximately causing or contributing to cause the accident.

(4) Neither of the passengers in either of the automobiles involved in the accident was guilty of any negligence proximately causing or contributing to cause the accident and their resulting injuries.

(5) Turning to the federal tort claims issue of whether Sgt. Provost was operating his automobile at the time and place of the accident within the course and scope of his employment as a member of the United States Army so as to render the United States responsible for his negligence, it should be noted that Section 2671 of the Tort Claims Act (Title 28 U.S.C.) makes the following definition:

> " 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

■ It is now well settled, however, that the phrase "acting in line of duty" as used in the Tort Claims Act is synonymous with "acting within the scope of his office or employment" and merely invokes the state law of respondeat superior. Williams v. United States, (1955) 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761; Merritt v. United States, (C.A.1, 1964) 332 F.2d 397; McCall v. United States, (C.A.9, 1964) 338 F.2d 589.

■ Since the accident in the principal case occurred in Tennessee, this Court must look to the law of Tennessee in determining this issue. Williams v. United States, *supra.* See also Noe v. United States, 136 F.Supp. 639; Frazier v. Nabors, 273 F.Supp. 148, reversed on other grounds, Frazier v. United States,

(C.A.6, 1969) 412 F.2d 22. Cases of this type are not novel in the federal courts, but the holdings in the various circuits are as diverse as the laws of the several states with respect to the doctrine of respondeat superior. As a general rule, where a service man is in travel status proceeding directly from one duty station to another pursuant to travel orders and he becomes involved in a motor vehicle accident, he is held to have been acting in the scope of his employment and the Government has been held liable under the Federal Tort Claims Act. Hinson v. United States, (C.A.5, 1958) 257 F.2d 178; United States v. Mraz, (C.A.10, 1958) 255 F.2d 115; Cooner v. United States, (C.A.4, 1960) 276 F.2d 220; McGarrh v. United States, (D.C.N.D.Miss., 1969) 294 F. Supp. 669. Even in this situation, however, some courts have arrived at a different conclusion. Chapin v. United States, (C.A.9, 1958) 258 F.2d 465, cert. denied 359 U.S. 924, 79 S.Ct. 607, 3 L. Ed.2d 627; United States v. Sharpe, 189 F.2d 239 (C.A.4, 1951). In the situation where accidents occurred while the service man was on leave or in delay en route status, most courts appear to have denied relief. McGarrh v. United States, (N.D.Miss., 1969) and cases cited therein. Under substantially the same circumstances other courts have concluded that the service man was acting within the scope of his employment even while travelling on leave. United States v. Kennedy, (C.A.9, 1956) 230 F.2d 674; O'Brien v. United States, (D.C.Me., 1964) 236 F.Supp. 792.

■ There appears to be no Tennessee case directly in point. However, the general law in Tennessee is well settled that an employee must be acting within the course and scope of his employment at the time of the accident before the employer will be held liable. See Midwest Dairy Products Co. v. Esso Standard Oil Co., 193 Tenn. 553, 246 S. W.2d 974 (1952); Haupt v. Cincinnati W. O. & T. P. Ry. Co., 34 Tenn.App. 1, 232 S.W.2d 598 (1950); Messer v. Reid, 186 Tenn. 94, 208 S.W.2d 528 (1948);

McKinnon v. Michaud, 37 Tenn.App. 148, 260 S.W.2d 721 (1953); United States v. Taylor, 236 F.2d 649, 74 A.L.R.2d 860, cert. granted 352 U.S. 963, 77 S.Ct. 364, 1 L.Ed.2d 320, motion denied 353 U.S. 956, 77 S.Ct. 862, 1 L.Ed.2d 907, cert. dismissed 355 U.S. 801, 78 S. Ct. 6, 2 L.Ed.2d 19. In this regard this Court in Frazier v. Nabors, *supra*, defined scope of employment as follows: "whether, from all of the evidence, it is made to appear that the employee at the time of the act was doing for his employer what he had been directed to do and whether he was engaged at the time in the performance of a service which was a contemplated or foreseeable incident of his employment. 35 Am.Jur., 'Master and Servant' §§ 553 and 558." "That he may also have been acting on behalf of himself as well as his employer does not prevent the act from falling within the scope of his employment." The Government relies almost entirely in its brief on the apparent lack of control that the United States had over the condition of Sergeant Provost's vehicle, his manner of operation, and the route taken by the Sergeant and his family. That the Government may have elected to permit Sergeant Provost to use his own automobile or may not have sought to control the details of all his movements is not of critical significance; what is of significance is whether the Government had the authority to control the movements of Sergeant Provost to the extent that it elected to do so. As stated in 35 Am.Jur., "Master and Servant" § 539, "It is not, however, essential that the master's control be in fact exercised, if he in fact has that power of control." See D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 514, 206 S.W.2d 897, 904 (1947), and cases cited therein.

The problem in this case is not with the general definition of the scope of employment as interpreted by the Tennessee courts. It would appear clear that Sergeant Provost would have been acting within the scope of his employment at the time of the accident had he been travelling directly from one military station to another pursuant to military travel orders. Neither the fact that the Government did not seek to control his route of travel or means of conveyance nor the fact that he was permitted to use his private automobile for such transportation would prevent his being within the scope of his employment under such circumstances. Rather, the problem in the present case arises by reason of the fact that Sergeant Provost did not proceed directly from one military station to another but rather took a 30-day military leave, thereby deviating from the direct route from military station to military station. The problem therefore presented is one of determining the Tennessee law with respect to deviation as it applies to respondeat superior. More exactly stated, the problem here presented is when an employee who has departed from his employment may be considered to have re-entered that employment, for Sgt. Provost's trip to his home at Anoka, Minnesota, was a clear departure from his military duties.

Cases from other jurisdictions seem to indicate that various tests have been proposed for determining the point at which a departure is terminated and the employee may be said to have re-entered his employment. The courts in some states appear to hold that the question depends upon the intention of the employee, or upon his starting to return. Professor Prosser, in his treatise on torts, suggests that the view now most generally accepted holds the employer liable only for torts occurring in a "zone of risk" within which the employee might reasonably be expected to deviate and that an employee who has departed from his employment does not return to that employment until he is "reasonably near" the authorized route. See Prosser, Law of Torts, 3 ed., p. 475.

With reference to the Tennessee cases upon this question, while there appear to be a number of Tennessee cases dealing with the problem of the extent of deviation necessary to constitute a departure [United States v. Taylor, (C.A.6, 1956) 236 F.2d 649; Standard Tire & Battery

Co. v. Sherrill, (1936) 170 Tenn. 418, 95 S.W.2d 915; Goff v. St. Bernard Coal Co., (1939) 174 Tenn. 558, 129 S.W.2d 205; Fitzgerald v. Wood, (1950) 34 Tenn.App. 345, 238 S.W.2d 103; Leeper Hardware Co. v. Kirk, (Tenn.App., 1968) 434 S.W.2d 620], there appear to be only two cases dealing specifically with the factual situation where the employee had an accident while returning from an unauthorized departure from his employer's business. In Burris v. Farrell Bros., 14 Tenn.App. 121 (1931), the servant was involved in an automobile accident while returning to his place of employment. The return was by a circuitous route in order to take a passenger to visit a sick relative. The Court held that the master was not liable, stating:

"If a driver at the time of causing an accident by his negligent operation of a motor vehicle is using it to serve the individual purposes of some third person and not those of the owner, the latter will not be liable for such negligence."

In Barker v. Elder, (1936) 20 Tenn. App. 251, 97 S.W.2d 654, a servant picked up two friends as he was en route to Pikeville, Tennessee, to work at his employer's potato house. Having performed a portion of his work at the potato house, he then returned his friends to Lee's Station, some five miles south of Pikeville, where he had first picked them up. On his way back to the potato house to resume his work there, he was involved in an automobile accident. In holding that the servant had not resumed his employment so as to cause his negligence in the accident to be imputed to his employer, the Court stated:

"When the servant undertook this personal mission, he stepped aside completely from his employment, and abandoned it for the time being, and he did and could have only resumed his employment upon his return to the place where he was to perform his duties. (Citations omitted)

"There is authority that when the driver delivers his goods and starts to return to his employment that he then resumes his authority as the servant of the master; but the great weight of authority is contrary to this view, and the reason is expressed in the case of Curry v. Bickley, 196 Iowa 827, 195 N.W. 617, 618, as follows: "'He is no more engaged in the employer's business, under such circumstances, in getting back to the place of employment, than he was in going away from it. He is serving his own purpose during all of such time. He lays aside his character of employee, and, without any right or authority so to do, takes his employer's car for purposes wholly personal to himself. He does not resume, in any legal or proper sense, the service of his master merely when he turns to get back to his place of employment.'"

■ Applying the reasoning in the two foregoing Tennessee cases to the facts of the present case, it would appear that Sgt. Provost could not be held to have returned to his military employment until he reached his post of assignment at Fort Gordon, Georgia, or at the very least until he returned to the direct route between McGuire Air Force Base and Fort Gordon, Georgia, which point would have been Augusta, Georgia, under the facts here presented. The Court accordingly concludes that Sgt. Provost was not within the scope of his employment as a member of the United States Army at the time and place of the accident and the action against the United States must accordingly be dismissed.

■ (6) The plaintiffs, Janie W. Smith, James O. Smith, and Jennifer Smith, are each entitled to recover damages from the defendant, Randolph J. Provost, for injuries and damages sustained as a direct and proximate result of the accident. Mrs. Janie W. Smith is entitled to recover the sum of $1600.00 from the defendant, Randolph J. Provost, for personal injuries sustained by her in the accident. Jennifer Smith is

entitled to recover the sum of $3,000 from the defendant, Randolph J. Provost, for personal injuries sustained by her in the accident. James O. Smith is entitled to recover the sum of $1000.00 from the defendant, Randolph J. Provost, for medical and other expenses incurred in the care and treatment of his wife and for loss of her services and the further sum of $1100.00 for medical and other expenses incurred in the care and treatment of his daughter, Jennifer Smith, and for the loss of her services, and the further sum of $1200. for property damage to his automobile and loss of clothing and other apparel.

An order will enter accordingly.