IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## MAE ELLEN WILLIAMS v. BAPTIST MEMORIAL HOSPITAL, ET AL.

**Circuit Court for Shelby County**
**No. CT-007191-01**

_____

**No. W2003-02872-COA-R3-CV - Filed December 30, 2004**

_____

**DISSENTING OPINION**

This is a wrongful death action growing out of allegations of medical malpractice lodged against Dr. Becky C. Wright and Metropolitan Anesthesiologist Alliance. On December 7, 2000, surgery was performed on the decedent to remove her gallbladder. Ultimately, the decedent suffered irreversible encephalopathy and lingered in a comatose state for nearly a year and a half before she died on April 24, 2002.

The trial court's scheduling order entered on January 31, 2003, required the Plaintiffs to "identify any expert who will be called to testify at the trial" on or before April 15, 2003. After new co-counsel for the Plaintiffs entered the case, the trial court set aside the scheduling order in its entirety on March 24, 2003, and set July 1, 2003, as the date by which Plaintiff's must identify any expert witnesses. In addition, the trial court set August 29, 2003, as the date for a hearing on all pending motions for summary judgment, and the court ruled that all materials related to such motions must be filed by August 22, 2003.

It is clear from reading the orders entered by the trial court that there were two separate events contemplated in the scheduling orders. First, there was the requirement that any experts testifying for the Plaintiffs *at trial* be identified by July 1, 2003. Second, there was the requirement that materials related to the motions for *summary judgment* be filed by August 22, 2003. Accordingly, we are presented with two different dates designed for two separate events in the litigation process, each with the aim of accomplishing two distinctly different objectives.

On August 22, 2003, the Plaintiffs filed the affidavit of Ronald J. Gordon, M.D., in response to Dr. Wright's motion for summary judgment. The trial court excluded the affidavit of Dr. Gordon as being insufficient and for violating the scheduling order, in that the Plaintiffs were fifty-two (52) days late in revealing the identity of an expert to testify on the decedent's behalf. Decedent lay in a comatose state for approximately eighteen months, allegedly due to the negligence of the defendant/anesthesiologist. It appears to this member of the Court that dismissal of the case for a delay of approximately a month and a half is unduly harsh.

Dr. Gordon is a Tennessee doctor who is board certified in anesthesiology. Dr. Gordon noted in his affidavit that the decedent "had a documented history of being difficult to intubate." He further stated that it was "below the standard of care to extubate a patient in [decedent's post-operative] condition and with this known history." Although Dr. Gordon does not name Dr. Wright specifically in his affidavit, it is abundantly clear that he is speaking about the negligence of the anesthesiologist, and the majority is correct in holding that his affidavit is fully adequate.

"Tennessee courts have . . . exhibited a liberal attitude toward grants of filing extensions." *Lawyer v. Lawyer*, 1984 Tenn. App. LEXIS 3210, at *7 (Tenn. Ct. App. 1984) (citing *State ex rel. Sims v. Reagan*, 175 Tenn. 607, 136 S.W.2d 521 (1939); *Leeper Hardware Co. v. Kirk*, 58 Tenn. App. 549, 434 S.W.2d 620 (1968)). The majority correctly sets forth the factors a trial court should consider when deciding a Rule 6.02 motion, *Sizemore v. United Physicians Insurance Risk Retention Group*, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001), however, this Court has also stated:

> The concept of excusable neglect is broad enough to apply to "simple, faultless omissions to act and, more commonly, [to] omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.E. 2d 74 (1993). Accordingly, the concept of excusable neglect can [even] be used to excuse failure to comply with a filing deadline that is attributable to a filer's negligence. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 394, 113 S.Ct. at 1497; *Marx v. Loral Corp.* 87 F.3d 1049, 1054 (9th Cir. 1996).
>
> . . . .
>
> *We have also held that the party's reason for failing to meet the deadline may be the single most important of the four factors* and that the trial court should examine the proffered reason to determine "(1) whether the circumstances involved were under a party's own control . . . and (2) whether the party was paying appropriate attention to the matter in light of the surrounding circumstances." *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d at 569-70. Thus, granting relief from filing deadlines under Tenn. R. Civ. P. 6.02 has been characterized as "repair work when lawyers have good reasons." *Day v. Northern Ind. Pub. Serv. Corp.*, 164 F.3d 382, 384 (7th Cir. 1999).

*Kenyon v. Handal*, 122 S.W.3d 743, 756–57 (Tenn. Ct. App. 2003) (emphasis added).

In this case, the Plaintiffs complied with the scheduling order with reference to the motion for summary judgment by submitting their counter-affidavit on August 22, 2003. Further, the Plaintiffs identified their expert witness ***within sixteen days*** after receiving discovery of information

which they considered essential to the opinions proffered by their expert.[1] Plaintiffs sought to enlarge the time within which to identify their expert witnesses due to the difficulty they encountered in discovering information relating to decedent's medical history.[2] The trial court, however, denied this motion.

I would hold that the Plaintiffs were timely in opposing the motion for summary judgment and that they showed good cause for a fifty-two day delay in identifying their expert. I would set aside the summary judgment in this serious wrongful death case and allow the Plaintiffs their day in court. Therefore, I respectfully dissent from the holding reached by the majority in this case.

_____
ALAN E. HIGHERS, JUDGE

---

[1] Note that Dr. Gordon relied specifically in his affidavit on the "documented history" of decedent. It was this history that plaintiffs did not receive until August 6, 2003, and which resulted in their very moderate delay.

[2] This is not an instance where a plaintiff in a medical malpractice action was extremely dilatory in securing an expert witness. *See Bailey v. Tasker*, No. E2003-00844-COA-R3-CV, 2004 Tenn. App. LEXIS 169, 146 S.W.3d 580, at *10 (Tenn. Ct. App. Mar. 17, 2004) (noting that, while the plaintiffs argued their failure to secure an expert witness was due to failure to obtain office notes related to treatment, the delay was not well taken by the trial court given that the plaintiffs had seventy-nine (79) days *after receiving the notes* within which to secure an expert). In addition, it is worth noting that the difficulty faced by the Plaintiffs in securing the necessary records in this case was due in part to the defendant/hospital's delay in producing the records. *Compare Lawyer*, 1984 Tenn. App. LEXIS 3210, at *4 (noting the reason offered by the attorney for the delay was his heavy caseload).