IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2008 Session

## PATTY J. CHEATWOOD v. CRYSTAL D. CURLE and BUD DAVIS LINCOLN MERCURY, LLC

**Appeal from the Circuit Court for Shelby County**
**No. CT-002658-05    Rita L. Stotts, Judge**

**No. W2007-02204-COA-R3-CV  - Filed July 7, 2008**

This appeal concerns the scope of an employer's liability for its employee's allegedly negligent operation of a motor vehicle owned by the employer. In this case both the employer and the employee were sued after the employee became involved in an automobile accident with another motorist. Arguing that there was no basis for holding it vicariously liable for any negligence on the part of its employee, the employer moved the trial court for summary judgment. The employer's motion was granted. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

WALTER C. KURTZ, SR. J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

John D. Horne, Memphis, Tennessee, for the appellant, Patty J. Cheatwood.

Lauren L. Holloway, Memphis, Tennessee, for the appellee, Bud Davis Lincoln Mercury, LLC.

**OPINION**

**I**

From approximately August 2003 to May 2004, Crystal D. Curle was employed as a service advisor at Bud Davis Lincoln Mercury, LLC (BDLM)—a car dealership located in Memphis, Tennessee. On May 25, 2004, while driving a 2001 Mitsubishi Eclipse owned by BDLM, Ms. Curle was involved in an automobile accident with another motorist, Patty J. Cheatwood.[1] The accident occurred on North Second Street in Memphis, several miles from the BDLM facility at which Ms. Curle was employed.

---

[1] The record reflects that the vehicle had only recently been acquired by BDLM.

Ms. Cheatwood filed suit in the Circuit Court for Shelby County against both Ms. Curle and BDLM on May 13, 2005. BDLM subsequently moved for summary judgment on the grounds that Ms. Curle had not been authorized to operate the vehicle and that she was not acting within the scope of her employment at the time of the accident. The trial court granted the motion by an order entered September 26, 2007. Although the claims against Ms. Curle are still pending, the trial court certified the order granting BDLM's motion as a final judgment pursuant to Tenn. R. Civ. P. 54.02, and this appeal followed.

For the reasons stated herein, we affirm the decision of the court below and remand this case for further proceedings.

## II

This Court's standard for reviewing a trial court's granting of a motion for summary judgment pursuant to Tenn. R. Civ. P. 56 has been stated often. "The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law." *Ferguson v. Nationwide Property & Casualty Ins. Co.*, 218 S.W.3d 42, 48 (Tenn. Ct. App. 2006) (citations omitted). "In determining whether or not a genuine issue of material fact exists for purposes of summary judgment . . . the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993) (citations omitted).

"When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Byrd*, 847 S.W.2d at 215). "If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Cantrell v. DeKalb County*, 78 S.W.3d 902, 905 (Tenn. Ct. App. 2001) (citations omitted).

"Summary judgment is not a disfavored procedural device and may be used to conclude any civil case, including negligence cases, that can be and should be resolved on legal issues alone[.]" *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997). It is not, however, a substitute for "the trial of issues of fact." *Id.* "Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Richberger v. West Clinic, P.C.*, 152 S.W.3d 505, 510 (Tenn. Ct. App. 2004) (citation omitted). We review a trial court's award of summary judgment de novo without attaching any presumption of correctness to the decision below, "and the task of the appellate court is confined to reviewing the record to determine whether the requirements for summary judgment have been met." *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 217 (Tenn. Ct. App. 1997) (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)); *see Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991).

# III

## A

Disposition of this case is governed by the general principles of agency law.[2]  "In Tennessee, the doctrine of respondeat superior permits the master/principal to be held liable for the negligent actions of his servant/agent." *Johnson v. LeBonheur Children's Medical Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) (citation omitted).  This means that "[a]n employer is liable for the negligent acts of an employee if the employee is on the employer's business and acting within the scope of his employment at the time the negligent act occurs." *Craig v. Gentry*, 792 S.W.2d 77, 79 (Tenn. Ct. App. 1990) (citation omitted); *see Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 416 (Tenn. Ct. App. 1988) ("To hold the master/principal liable, it must be established 'that the servant or agent shall have been on the superior's business, acting within the scope of his employment.'") (quoting *Nat'l Life & Accident Ins. Co. v. Morrison*, 179 Tenn. 29, 38, 162 S.W.2d 501, 504 (1942)).  Summarized this means that liability under a theory of respondeat superior requires "the plaintiff [to] prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liability Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992) (citations omitted).

There is no dispute in this case that Ms. Curle was an employee of BDLM at the time of the accident at issue.  The question is whether the trial court properly held that Ms. Curle's use of the vehicle was unrelated to her employment.[3]

Whether an employee's actions are within the scope of an employment relationship is to be analyzed in accordance with the *Restatement (Second) of Agency*.  Section 228 of the *Restatement* reads as follows:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master; and

---

[2] At oral argument, counsel for Ms. Cheatwood stated that she did not seek to rely on the presumption of agency created by Tenn. Code Ann. §§ 55-10-311 and 312 since the vehicle had yet to be titled in the name of BDLM.

[3] There are also instances in which an employer may be liable for the tort of an employee even though it was committed outside the scope of the employee's employment.  *See Restatement (Second) of Agency* § 219(2) (1958); *cf. McReynolds v. McReynolds*, No. 01-A-019109CV00315, 1992 WL 14127, at *2 (Tenn. Ct. App. Jan. 31, 1992).  But, these considerations are not implicated in the present case, and we need not discuss them further here.

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

*Restatement (Second) of Agency* § 228 (1958). The next section provides further guidance:

(1) To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

*Id.* at § 229; *see Tennessee Farmers*, 840 S.W.2d at 937-38.

In *Bowers v. Potts*, 617 S.W.2d 149 (Tenn. Ct. App. 1981), this Court summarized the law for evaluating an employee's actions:

> If an employee who is supposed to perform certain work for his employer steps or turns aside from his employer's work or business to serve some purpose of his own, unconnected with the employer's business, or if he deviates or departs from his work to accomplish some purpose of his own that is unconnected with his employment, the relationship of employer and employee or master and servant is thereby temporarily suspended. The master or employer is not liable for the acts of the servant or employee during the period of such suspension, because the employee is then acting upon his own volition, obeying his own will, not as a servant or agent, but as an independent person, even though he may intend and does return to his employer's business after he has accomplished the purpose of his detour from duty. In other words, where a servant or employee deviates from his line of duty and engages in a mission of his own, or from some third person, the master or employer cannot be held liable or responsible for the acts of the servant or employee.

*Id.* at 156 (citations omitted); *see also Craig*, 792 S.W.2d at 79 (discussing *Leeper Hardware Co. v. Kirk*, 58 Tenn. App. 549, 434 S.W.2d 620 (1968)).

Travel by employees is particularly amenable to disputes over whether the employer should be held vicariously liable for the negligence of its employee. Justice Koch, while still a member of this Court, articulated the rules to be applied in confronting these situations:

> When an employee's job requires travel, an employer may be vicariously liable for the employee's negligence while traveling. The threshold issue in cases involving travel is whether the employment created the necessity for travel. If the employee's duties created a necessity for travel, then the employee is within the scope of employment while traveling, as long as the employee does not deviate from the employer's business and engage in conduct the employer had no reason to expect. If, however, the employee's work played no part in creating the reason for travel and was only incidental to the trip, then the trip was not within the scope of employment. Travel that serves a dual purpose, the employer's and the employee's or a third person's, will still be considered to be within the scope of employment.
>
> The courts have devised several helpful tests to determine whether a particular trip is within the scope of employment. If the trip would have taken place even without the business reasons, then the trip is personal and not within the scope of employment. If, however, the trip was one that would have required the employer to send another employee over the same route or to perform the same function if the trip had not been made, then the trip is within the scope of employment.

If a trip is authorized by an employer for business purposes, then the return trip is also within the scope of employment as long as the employee has not deviated from the employer's business.

*Tennessee Farmers*, 840 S.W.2d at 938-39 (internal citations omitted); *cf. Restatement (Second) of Agency* § 238 ("Except where he is at fault or fails to perform a non-delegable duty, a master is not liable for harm caused by the use of instrumentalities entrusted by him to a servant when they are not used in the scope of employment.").

This Court has further acknowledged that, "[w]hile the principles embodied in the respondeat superior doctrine are relatively easy to articulate, they are not always easy to apply." *Tennessee Farmers*, 840 S.W.2d at 937 (citation omitted). "The doctrine does not lend itself to bright line rules . . . but rather requires the weighing and balancing of the facts and circumstances of each case." *Id.* (citations omitted).

**B**

In order to assess the trial court's ruling, we must review the evidence presented to it by the parties.

The record indicates that around midday on May 25, 2004 Ms. Curle took the car in question off of the BDLM property, driving it onto the public roads. Ms. Curle's job as a service advisor did not involve driving vehicles onto the streets. Rather, her duties were limited to assisting customers who had brought in vehicles for servicing and to inspecting used cars traded in by customers; these responsibilities did not extend to performing test drives. According to Ms. Curle's deposition testimony, she did not have permission to take this vehicle off of the lot, and she did not ask for permission to use the car. In her deposition Ms. Curle says simply, "I just took it to go." A service advisor's taking vehicles from the BDLM property was, according to the evidence in the record, far from a common occurrence. According to the evidence, only mechanics would drive vehicles in order to test them, and Ms. Curle testified that a mechanic did not have the authority to give anyone else permission to drive a vehicle from the lot.

As expressed in her deposition, Ms. Curle's position is that she was given the keys to the car by the BDLM sales department and asked to perform her inspection. She contends that she took the car on the day of the accident in order to help a mechanic by checking the car—specifically to see if it was experiencing vibrations or having its "check engine light" come on. She does not remember the name of the mechanic she was ostensibly helping, nor did she testify that this mechanic actually solicited her help. Ms. Curle drove the car to her home approximately eight miles away. She left for her home in order to obtain some personal documents that she admits did not relate to her work at BDLM. Following the accident, Ms. Curle was terminated for unauthorized use of a BDLM vehicle. Ms. Curle does not dispute that this was the reason for her termination.

Ms. Cheatwood argues that there is here still a genuine controversy as to the question of

agency. As evidence, she relies upon the part of Ms. Curle's deposition in which she avers that she took the car in order to help one of the BDLM mechanics.

## C

We conclude that the motion for summary judgment was properly granted. While the ultimate determination of agency is normally reserved for the finder of fact at trial, it may be decided earlier by the court when "the departure from the master's business is of marked and decided character." *Craig*, 792 S.W.2d at 80 (citing *Home Stores, Inc. v. Parker*, 179 Tenn. 372, 166 S.W.2d 619 (1942)). That is, the inquiry "becomes a question of law when the facts are undisputed and cannot support conflicting conclusions." *Tennessee Farmers*, 840 S.W.2d at 937; *see Willis v. Settle*, 162 S.W.3d 169, 183 (Tenn. Ct. App. 2004) (citations omitted); *see also Godar v. Edwards*, 588 N.W.2d 701, 706 (Iowa 1999) (citations omitted); *Allen Kane's Major Dodge, Inc. v. Barnes*, 257 S.E.2d 186, 190 (Ga. 1979).

All of the evidence in the record indicates that, as a service advisor, Ms. Curle was not authorized to drive cars from BDLM's property.[4] This was not only BDLM's official policy, but there is also no evidence to indicate that in practice BDLM nonetheless acquiesced in the driving of its vehicles by formally unauthorized persons. It was the responsibility of others, not Ms. Curle, to drive BDLM's vehicles in order to conduct inspections on them. Instead, she took a BDLM car without permission in order to perform a wholly personal errand. The fact that she may have subjectively felt that this could be of assistance to a BDLM mechanic is by itself of no consequence. Given these circumstances, the question of agency in this case must be considered a matter of law for the court.[5]

In summary, the evidence is uncontradicted that Ms. Curle's use of the vehicle was both unauthorized and contrary to her employer's instructions. Her trip was undertaken in order to serve her own purposes, and there is no basis upon which to reasonably conclude that her actions were for her employer's business and within the scope of her employment. Accordingly, we conclude that this is one of those instances in which summary judgment is appropriate to relieve the employer of potential responsibility for its employee's allegedly negligent operation of a motor vehicle.

---

[4] To be sure, though, an agent's exceeding of his or her authority does not always preclude holding the principal liable. *See Restatement (Second) of Agency* § 230 (stating that an employer may still be liable for acts it has forbidden); *cf. id.* at §§ 233-34 (discussing acts at forbidden times and in forbidden places). Thus, an employer's simply having prohibited an undertaking is not necessarily sufficient to terminate its liability. *See, e.g., Porter v. City of Manchester*, 921 A.2d 393, 400 (N.H. 2007); *Laidlaw Transit, Inc. v. Crouse*, 53 P.3d 1093, 1099 (Alaska 2002); *Warner Trucking, Inc. v. Carolina Casualty Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997); *Gillis v. Great Atlantic & Pacific Tea Co.*, 27 S.E.2d 283, 286-87 (N.C. 1943).

[5] Ms. Cheatwood states in a supplemental affidavit that, after she had been removed from her own car and was awaiting an ambulance, she observed a male individual apparently employed by BDLM at the scene of the accident holding a license plate or "driver out" tag. Even if true, these facts would not contribute anything to resolution of the agency question in this case.

**IV**

For the reasons stated above, the judgment of the trial court is affirmed, and this case is remanded for further proceedings not inconsistent with this opinion. Costs of this appeal are taxed to the appellant and her surety for which execution may issue if necessary.

_____
WALTER C. KURTZ, SENIOR JUDGE