CHARLES CALDWELL and ADWELL MOTORS, INC., Defendant-Plaintiff-in-Error, v. J. E. ADAMS, SR., Plaintiff-Defendant-in-Error.

CHARLES CALDWELL and ADWELL MOTORS, INC., Defendant-Plaintiff-in-Error, v. J. E. ADAMS, JR., Plaintiff-Defendant-in-Error.—367 S.W. (2d) 804.

Middle Section. November 30, 1962.

Certiorari Denied by Supreme Court April 3, 1963.

374

Tomlinson & Dale, Columbia, for plaintiff in error.

MacFarland & Colley, Sam D. Kennedy, Columbia, for defendants in error.

CHATTIN, J. These cases arose out of a collision between a service truck owned and registered in the name of the defendant, Adwell Motors, Inc., and driven by the defendant, Charles Caldwell, an employee of the Motor Company, and an automobile owned by the plaintiff, J. E. Adams, Sr., and driven by the plaintiff, J. E. Adams, Jr., the minor son of J. E. Adams, Sr. The

collision occurred about midnight on July 29, 1960, in the town of Columbia, Tennessee.

The plaintiff, J. E. Adams, Sr., sued for property damages and also for medical expenses and loss of services of his minor son. The plaintiff, J. E. Adams, Jr., sued for personal injuries.

The two cases were consolidated for trial.

The defendant, Adwell Motors, Inc., at the conclusion of all the evidence in the cases, moved the court to direct a verdict in its favor on the grounds the defendant, Caldwell, was not acting in the course or within the scope of his employment with the defendant, Motor Company, and contrary to instructions of his employer, and that at the time of the accident he was upon a mission of his own. The court overruled the motion.

The jury returned a verdict in favor of both plaintiffs and against both defendants.

The defendant, Charles Caldwell, has not appealed from the judgment. The defendant, Adwell Motors, Inc., has appealed in error to this Court and has assigned three assignments of error.

It is admitted by the defendant in its brief the negligence of Caldwell was the proximate cause of the accident.

Caldwell, at the time of the accident, was an employee of the Adwell Motors, Inc., and had been for three and one-half years prior thereto.

Adwell Motors, Inc., had furnished Caldwell transportation to and from his work when he was first employed by the Motor Company and did so for about two or three

years. During that time Caldwell lived outside the city limits of Columbia. He then moved into the city and Mr. Adwell told Caldwell not to use the service truck without permission. This occurred about a year prior to the accident. However, Caldwell testified he had taken the truck on about four different occasions to go home in without permission but on each occasion he would either tell Mr. Craige, the general manager of the garage, or Mr. Adwell, President of the Company, and neither had reprimanded him for so doing. Both Adwell and Craige denied Caldwell had told them he had used the truck without permission.

On the night of the accident, Mr. Adwell was on vacation and Mr. Craige was not at the garage when Caldwell took the truck. Caldwell testified he thought it would be all right to take the truck to see if it still missed.

On the evening of the accident, Caldwell had adjusted the carburetor and the points on the service truck. He had then driven the truck to his home during the supper hour and the truck seemed to operate satisfactorily. After his meal, he returned to the garage and worked until ten o'clock P.M. He told a fellow employee, T. N. Flanigan, he was going to take the truck out the Santa Fe Pike and see if it missed. He left the garage in the truck alone and drove it some distance out the pike and turned around. On his way back toward Columbia, he stopped at the Bel-Air Cafe on the Santa Fe Pike where he stayed some two hours drinking beer.

He left the cafe about midnight and was on his way home in Columbia when the accident occurred. Plaintiff, J. E. Adams, Jr., and his witnesses, Ewell Goodwin, Joe Howard Allen, and George Rieves, all testified they saw

Caldwell immediately after the accident and he was intoxicated. Mr. Goodwin further testified he was following the truck prior to the accident and it was weaving from one side of the highway to the other.

Rieves and Allen were City Patrolmen and they placed Caldwell under arrest for driving while under the influence of an intoxicant. Later, Caldwell pleaded guilty to the charge in the city court of Columbia and paid a fine.

It should be noted here that both plaintiffs in their declarations charged Caldwell with driving the truck at the time of the accident while under the influence of an intoxicant.

We will consider defendant's first and second assignments of error together as they present the same question.

Defendant's first assignment of error is to the effect the trial court erred in overuling its motion for a directed verdict upon the grounds heretofore set out. Defendant's second assignment of error is, there is no material evidence to support the verdict against the defendant Adwell Motors, Inc.

We are of the opinion from the foregoing recital of the undisputed facts in the case, the defendant, Caldwell, deviated from his master's business when he entered the Bel-Air Cafe and remained for some two hours drinking beer and becoming intoxicated.

"The general rule is that the owner of a motor vehicle is not liable under respondeat superior for the acts of another who is driving it, unless it is being used on the business of the owner; and likewise when initially it was

being used on the business of the owner, but at the time of the accident the servant or agent has turned aside from or abandoned the affairs of the owner and is using it entirely for his own business or pleasure.'' Fitzgerald v. Wood, 34 Tenn.App. 345, 238 S.W.(2d) 103; 60 C.J.S. Motor Vehicles sec. 437, page 1093.

''While a mere disregard of instructions or deviation from the line of his duty by a servant does not relieve his master of responsibility, if the servant, for purposes of his own, departs so far from the line of his duty that for the time being his acts constitute an abandonment of his service, the master is not liable.

\* \* \* \* \* \*

''In cases where the deviation is slight and not unusual, the court may, and often will, as a matter of law, determine the servant was still executing his master's business. So too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremities will be regarded as involving merely a question of fact to be left to the jury.'' 5A Am.Jur., Section 636, page 630-631.

''In 1834 Baron Parke uttered the classic phrase, that a master is not liable for the torts of his servant who is not at all on his master's business, but is 'going on a frolic of his own.' If the servant steps outside of his employment to do some act for himself, not connected with the master's business, there is no more responsibility for what he does than for the acts of any stranger. If he has no intention, at least in part, to perform any service for the employer, but only to further a personal

end, his act is not within the scope of the employment."
Prosser on Torts, page 352.

In Cunningham v. Union Chevrolet Company, 177
Tenn. 214, 148 S.W.(2d) 633, the following rule is quoted
with approval: "The mere fact that the injury com-
plained of was caused by negligence of the servant in
the performance of an act which, taken per se, was
within the scope of his employment, will not impose a
liability upon the master, if the act was merely inci-
dental to the servant's attempt to perform an act en-
tirely beyond the scope of his authority."

■ We think the insistence of the plaintiffs, that since
it was stipulated the truck was owned and registered in
the name of Adwell Motors, Inc., the trial court was
correct in submitting their cases to the jury because of
the presumption thereby raised that Caldwell was oper-
ating the truck in the course of and within the scope of
his employment, is untenable. This is so because, even
though Caldwell may have been on a mission for his em-
ployer initially, when he deviated from his master's
business to satisfy his own personal wants by drinking
to such an extent he became intoxicated, he thereby
abandoned his master's business. This uncontradicted
evidence, we think, destroyed the arbitrary presumption
of the statute. The mere fact the accident happened
after he left the cafe and was on his way home would
not make defendant liable.

"A legal presumption is a fiction of the law and is an
assumption for convenience, but where proof to the con-
trary is introduced, the assumption is waived for it is
no longer logical to assume a fact which is refuted by

positive testimony." H. G. Hill Company v. Squires, 25 Tenn.App. 164, 153 S.W.(2d) 425.

 It is next insisted by plaintiffs they made out a prima facie case under the common law by proving: (1) the defendant, Adwell Motors, Inc., owned the truck; (2) that it was being operated by its employee, Caldwell; and (3) at the time of the accident the vehicle was being operated under conditions resembling those which normally attended its operation in the master's business. It is urged these proven facts created an inference Caldwell was at the time of the accident on defendant's business, and acting within the scope of his employment.

We cannot agree to this argument. It is true there is proof in the record the defendant owned the truck and at the time of the accident it was being driven by its employee, Caldwell.

"It is undoubtedly true, as a general proposition of law, that the doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the injury resulting from the wrong at the time and in respect of the very transaction out of which the injury arose, and the mere fact that the driver of the automobile was the defendants' servant will not make the defendant liable. It must be further shown that at the time of the accident the driver was on the master's business, and acting within the scope of his employment." Goodman v. Wilson, 129 Tenn. 464, 166 S.W. 752, 51 L.R.A.,N.S., 1116.

However, the undisputed proof is Caldwell deviated and abandoned his master's business and engaged in a personal frolic. At the time of the accident he was on

his way home in a drunken condition. We think the proof falls short of showing the truck was being operated under conditions resembling those which normally attended its operation in the master's business. Thus, we have no credible inference upon which a jury could base a judgment in favor of the plaintiffs against the defendant, Adwell Motors, Inc.

The question of whether a trial court should direct a verdict on behalf of the defendant where the proof is uncontradicted an inference that the automobile was being driven on the owner's business would be overcome, is fully discussed in the case of Bell Cab & U-Drive-It Company v. Sloan, 193 Tenn. 352, 246 S.W.(2d) 41, in which it is said: "It would appear and that has been the holding of this Court from its beginning that since you do have credible inference upon which the plaintiff might base his case then that the jury, the trier of facts, should pass on the matter."

The opinion then discusses the holdings in other states and concludes: "Thus we have the holdings of the courts above cited that uncontradicted testimony may overcome an inference to such an extent that at the conclusion of all the proof the trial judge may take the matter from the jury. It seems that there is no basic rule that can be established in these cases but each case must depend upon its facts, in and of itself. The proposition is this: 'Are there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?' Wigmore On Evidence, Vol. 9, Sec. 2494, page 299, and cases there cited."

We are definitely of the opinion a jury would not be warranted in rendering a judgment for plaintiffs against

the defendant, Adwell Motors, Inc., under the facts of this case based upon the inference stated. We think fair minded men would have to say Caldwell had abandoned his master's business and was not capable of returning or resuming his master's business under the facts.

It is further insisted by plaintiffs if Caldwell did deviate from his employment by going into the cafe and becoming intoxicated, yet at the time of the accident he had returned to his employment since the accident occurred upon the route he would have normally taken to his employer's business.

The fact that, in the course of the deviation, the driver became so intoxicated as to preclude the formation of any intention to return to his business duties may negative any finding of resumption of employment." 51 A.L.R. (2d), page 99; Rosa v. United States (1954, D.C. Hawaii) 119 F.Supp. 623; Mandelbaum v. United States (1955, D.C.N.Y.) 131 F.Supp. 187.

"However it should be noted that where the issue is whether the employment has been resumed after a private excursion for drinking purposes, the fact that the driver is intoxicated may militate against any conclusion that he had the necessary intention to return to his work." 51 A.L.R.(2d), Section 6, page 32; Rosa v. United States, supra; Mandelbaum v. United States, supra.

In the case of Ely v. Rice Brothers, 26 Tenn.App. 19, 167 S.W.(2d) 355, Faircloth was employed as a car salesman for Rice Brothers and was furnished a car to go to and from his home to work. On the occasion of the accident, Faircloth had been to see a prospect. On his way back, he stopped at a restaurant and drank a bottle of beer. He then left the restaurant and was on his way

home when the accident occurred. In disposing of the question of whether the trial court should have directed a verdict upon these facts, Judge McAmis, the writer of the opinion, said:

"We think the question of whether Faircloth had returned to the service of defendant after stopping at the restaurant should have been submitted to the jury. The time spent at the restaurant is not clear from the proof and the extent to which he became intoxicated while there is a matter as to which there is some conflict in the evidence. If the jury should find, from all the evidence, that he stopped at the restaurant for the purpose of becoming intoxicated or engaging in a frolic after completing his day's work, the mere fact that he was on the regular route to his home customarily followed in going from his employment would not make defendant liable."

■ Finally, it is urged by plaintiffs the defendant ratified the acts of Caldwell for the reason he was retained by defendant as its employee for some five months after the accident.

We cannot agree to this contention. In the case of Woody v. Ball, 5 Tenn.App. 300, it was held that the fact the employer retained the party in its employment after it learned of his unauthorized act did not justify the holding that such retention was a ratification of the acts causing the injury.

"While, as in the case of other injuries by a servant, the owner of a motor vehicle may become liable by ratification of the wrongful act of the driver of his vehicle, such ratification does not ensue from the mere fact that

the owner retains him in his employ." 60 C.J.S. Motor Vehicles sec. 437, pages 1094-1095.

We do not deem it necessary to consider defendant's third assignment of error since we must sustain defendant's first and second assignments.

It results the trial court is reversed, and the suits dismissed as to the defendant, Adwell Motors, Inc., with costs.

Shriver and Humphreys, JJ., concur.