Mary CRONIN, Conservatrix of the Estate of Kenneth Cronin, Plaintiff,

v.

The HERTZ CORPORATION, Defendant and Third Party Plaintiff,

v.

Thomas M. HULL, Third Party Defendant and Fourth Party Plaintiff-Appellant,

v.

UNITED STATES of America, Fourth Party Defendant-Appellee.

No. 721, Docket 86–6231.

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1987.

Decided May 19, 1987.

Daniel R. Solin, New York City (Claude M. Tusk, Sandra L. Duggan, Solin & Breindel P.C., New York City, Philip J. O'Connor, Gordon, Muir & Foley, Hartford, Conn., of counsel), for third party defendant and fourth party plaintiff-appellant.

. W. Philip Jones, Asst. U.S. Atty. (Stanley A. Twardy, Jr., U.S. Atty. for the District of Connecticut, of counsel), for fourth party defendant-appellee.

Before OAKES, MESKILL, and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

This appeal involves a question of the vicarious liability of the United States for an automobile accident caused by a civilian employee on temporary assignment away from home. The accident occurred after working hours and after a number of alcoholic drinks, but on the employee's way back to lodging provided by the Government in a rental car paid for by the Government. The United States District Court for the District of Connecticut, T. Emmet Clarie, Judge, held that the employee, Thomas M. Hull, was not acting within the scope of his employment at the time of the accident and therefore that the United States was not vicariously liable as his employer under the Federal Drivers Act, 28 U.S.C. § 2679(b) (1982). We affirm.

Hull was employed by the United States as a civilian nuclear engineering technician at the Pearl Harbor Naval Shipyard in Hawaii. In August 1980 he was assigned, along with eight other employees of the shipyard, to take a training course at the Electric Boat Division in Groton, Connecticut. His temporary duty orders for the 88–day Groton assignment provided for

payment of his expenses on a per diem basis seven days a week, although classes were held for only five days. Arrangements for air travel, lodging, and three Hertz rental cars to be shared by the nine employees were made in advance by Pearl Harbor personnel and United States funds were used as payment. The rental cars were made available and used both for travel to the site of the training course, which was less than a mile from the employees' motel, and for other purposes, such as shopping, church attendance, and recreation. This personal use of the cars, which included visiting bars, was known to all in the group, including the senior employee present. It was understood that whoever was using a car would return it to the parking lot of the motel in order to make it available to other members of the party, at least for the purpose of traveling to class.

Classes were held between 7:00 a.m. and 3:30 p.m., Monday through Friday. On Wednesday, October 1, 1980, Hull left class and walked to a nearby bar where he ate, played pool and video games, and sipped three or four drinks consisting of bourbon and water. At some time before 10:00 p.m. he took one of the rental cars, went grocery shopping, and then stopped at another bar. After ordering one or two drinks for himself, he met a fellow who bought several rounds more until—by now quite sleepy—he left the bar at around 2:00 a.m.. He had had a total of some eight to ten bourbon and waters since leaving class. On the way back to the motel, after having missed a turn that would have taken him directly back, Hull collided with a motorcyclist, Kenneth Cronin, who was severely injured. At the time of his arrest, Hull was found to have a blood alcohol level of .14 percent, considerably over the Connecticut intoxication limit of .10 percent.

Cronin's wife, as conservatrix of his estate, sued the Hertz Corporation under a Connecticut statute making auto renters liable for their lessees' accidents, Conn. Gen.Stat. § 14–154a (1987). Hertz impleaded Hull who in turn impleaded the United States. Hull claimed that he was acting within the scope of his employment at the time of the accident and that therefore the United States was vicariously liable under the Federal Drivers Act, 28 U.S.C. § 2679. Hertz settled Cronin's claim by paying approximately $1.9 million and obtained a stipulated judgment against Hull pursuant to which he would be liable to Hertz only if the United States were held exclusively liable under the Act. After hearing the evidence, including Hull's own testimony that he was not performing any duties and was not thinking about business at the time of the accident, the district court concluded that Hull was on "a frolic of his own" and accordingly was not acting within the scope of his employment. On appeal, Hull argues, first, that he was within the scope of his employment for the entire duration of his Groton assignment, with the recreational use of the car being incidental to the employment, and, second, that even if he was not acting within the scope of his employment earlier in the evening when he was visiting the bars, he was so acting at the time of the accident because he was then seeking to fulfill his obligation to return himself and the car to the motel to be ready for class the following morning.

## DISCUSSION

The Federal Drivers Act, adopted in 1961, makes the federal government exclusively responsible for claims for damages against its employees arising from the operation of vehicles in the scope of their government employment. 28 U.S.C. § 2679(b); see S.Rep. No. 736, 87th Cong., 1st Sess., reprinted in 1961 U.S.Code Cong. & Admin. News 2784. Grafted on to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671–2680, the Federal Drivers Act does not contain any federal definition of "scope of employment" but rather, as in the case of tort claims generally, looks to "the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b); see also Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam) (finding a tort case "controlled by the California doctrine of respondeat superior").

Thus, we look to the law of Connecticut. In doing so, a preliminary question we face is whether Connecticut law resembles that of some states, for example, Arizona, *see Driscoll v. Harmon*, 124 Ariz. 15, 16, 601 P.2d 1051, 1052 (1979) (en banc), that maintain a double standard of liability by affording employees a broad right of recovery for injuries incurred within the scope of employment under the law of workers' compensation, while not affording third parties coextensive rights against the employer for torts by employees under the common-law doctrine of respondeat superior. It is important to note first that the standard for respondeat superior liability here—"scope of employment"—and the standard under Connecticut's workers' compensation statute—"course of employment," Conn.Gen.Stat. § 31–284(a) (1987)—are remarkably similar, and, indeed, Connecticut courts have often used the terminology interchangeably. *See, e.g., Corcoran v. Jacovino*, 161 Conn. 462, 470, 290 A.2d 225, 230 (1971); *Begley v. Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 449, 254 A.2d 907, 910 (1969). In addition, as a general proposition principles established in cases involving workers' compensation are said to be "equally applicable to cases brought under the common law." *D'Addario v. American Automobile Ins. Co.*, 142 Conn. 251, 255, 113 A.2d 361, 363–64 (1955). It is therefore proper for us to look to the compensation cases for guidance in this respondeat superior case.[1]

We also note that Connecticut law follows no mechanical formula or set of formulae relating to "deviations," "detours," "frolics," and the like, labels in the legal literature of vicarious responsibility. Rather, Connecticut courts look to the individual facts in a given case and the context in which they occur, and balance the factors involved in a determination of scope of employment. Thus, as the Supreme Court of Errors put it in *Hickson v. W.W. Walker Co.*, 110 Conn. 604, 611, 149 A. 400, 403 (1930):

> [W]hether the extent of his departure from the scope of his employment, or the area of his service, was so unreasonable as to make of his act of deviation an independent journey of his own rather than a mere detour, or one incidental to his employment, is a question of degree, and ordinarily one of fact, unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure instead of a deviation still incidental to his employment.

We take it then that Connecticut law is not out of line with the basic American law on "scope of employment" related in *Restatement (Second) of Agency* §§ 228–237 (1958). Therefore we must examine and weigh a number of factors, the weight of which varies with the circumstances involved, including, as put by a leading tort authority, "the time and place of the deviation, its extent with relation to the prescribed route, whether its motivation is in part to serve the master, and whether it is a usual sort of deviation for servants on such a job." 5 Harper, James & Gray, *The Law of Torts* § 26.8, at 40 (2d ed. 1986).[2]

Hull first argues that he was acting within the scope of his employment for the duration of his temporary duty assignment, in short, that whatever he did while he was in Connecticut was on his employer's general business of training him in the nuclear field. He cites for this proposition *Harivel v. Hall-Thompson Co.*, 98 Conn. 753, 120 A. 603 (1923), and *Morin v. Lemieux*, 179

---

1. Parenthetically we note that the textwriters liken the test of foreseeability in respondeat superior cases to cases involving workers' compensation liability rather than negligence liability, *see* 5 Harper, James & Gray, *The Law of Torts* § 26.7 at 28–31 (2d ed. 1986).

2. We also note that neither Connecticut nor any other state, save one, Florida, has adopted the theory that an automobile is such a dangerous instrumentality that vicarious liability should be imposed whenever the vehicle is being used with the employer's express or implied consent, *see* 5 Harper, James & Gray § 26.10, at 59 & n. 9, although, ironically, Connecticut's imposition of liability upon The Hertz Corp. in this case involves a statute imposing vicarious liability where the vehicle is simply being used with the owner's consent. *See* Conn.Gen.Stat. § 14–154a (1987).

Conn. 501, 427 A.2d 397 (1980). In *Harivel,* a traveling salesman was injured in a hotel fire in Virginia while on company business for a Connecticut employer. The court, after noting that the salesman's salary covered the travel period and his expenses were paid by his employer, held that for workers' compensation purposes he was injured in the course of his employment. The court stated, however, that "[i]f he departed from the employment, which required him to reach Richmond by continuous travel reasonably taken, and undertook some business, convenience, or pleasure of his own, he would not for such period be in the course of his employment." 98 Conn. at 756, 120 A. at 604. In *Morin* a carpenter, sent to an away-from-home construction site by his employer, was injured while walking from transportation furnished by his employer to an apartment also furnished by the employer. The employee was likewise held covered by workers' compensation, with the court noting that "[t]he employee intended to go and was in fact going directly from furnished transportation to furnished lodgings." 179 Conn. at 506, 427 A.2d at 400. Yet the court did ask the question, *id.* at 504, 427 A.2d at 399, whether the employee's "return trip from work [had] ended so that the injury was outside of the course of his employment," thus recognizing that the temporarily assigned employee could at times step outside the course of employment.

Despite the distinguishing dicta in *Harivel* and *Morin,* the Government does not directly controvert their reasoning, but rather suggests that because they are workers' compensation cases they are inapplicable in this respondeat superior situation. We find this argument unavailing, for as we have already noted, we look to Connecticut workers' compensation cases only insofar as they serve to clarify the boundaries of "scope of employment." [3]

The Government also argues that because Hull was on his own recreational business he necessarily was not on his employer's business, even though his employer had in effect consented to the use of the vehicle in question, citing *Bradlow v. American District Telegraph Co.,* 131 Conn. 192, 196, 38 A.2d 679, 680 (1944), and *Mastrilli v. Herz,* 100 Conn. 702, 704, 124 A. 835, 835 (1924). Neither of these cases, however, involves an employee on temporary duty away from home. Nevertheless, we cannot accept, because we do not think the Connecticut court would accept, the appellant's argument that persons on temporary duty are at all times acting solely for the employer's benefit, and "are always within the scope of their employment." Rather, we look to the facts and to the individual factors involved. Were Hull to have been involved in a fracas at one of the bars he visited, we hardly think the Government would be held responsible for any injuries caused by the resulting fisticuffs. So too, if he had intentionally thrown his groceries at a plate glass window at the convenience store he visited. To be sure, the Federal Drivers Act relates only to the operation of an automobile, but if we should suppose that Hull had on a given weekend driven from Connecticut to Atlantic City, New Jersey, to engage in a little gambling or to see a friend, it seems unlikely that the Government could be held responsible for tortious acts committed during such a personal trip. An employer who sends an employee away for temporary duty does not automatically become an insurer for all that the employee may do while he or she is away from home.

Rather, we think the Connecticut court would initially put some emphasis on the question whether Hull's conduct was "actuated, at least in part, by a purpose to serve the master." *Restatement (Second) of Agency* § 228(1)(c). So saying, we recognize that some acts of an employee even when committed in a state of intoxication

3. For the same reason we reject the Government's fall-back argument that under Connecticut's workers' compensation statute an employee is not entitled to compensation when the injury is "caused by the wilful and serious mis-

conduct of the injured employee or by his intoxication." Conn.Gen.Stat. § 31–284(a) (1987). This exception for intoxication is irrelevant as all parties agree that this case is not governed by the workers' compensation statute.

may nevertheless be said to be actuated by the interests of the employer. *See, e.g., Ira S. Bushey & Sons, Inc. v. United States,* 398 F.2d 167, 169–71 (2d Cir.1968) (drunken seaman held to be within scope of employment when he turned water intake valve wheel some 20 times, thereby letting water into drydock and causing ship to fall against drydock wall); *Nelson v. American-West African Line,* 86 F.2d 730 (2d Cir.1936) (drunken boatswain routing plaintiff out of his bunk with a blow, saying, "Get up, you big son of a bitch, and turn to," held to be arguably within the scope of employment), *cert. denied,* 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873 (1937). And here we note that at the very least Hull's accident occurred while he was attempting to return to the motel—a fact on which his second argument relies exclusively. If purpose is determinative, Hull's return to the motel would indicate that he was at least in part actuated by his employer's interests, namely, that he would get to school in the morning and that his coworkers would have the use of the rental car to get to school.

With this first factor of motivation providing no easy solution to the case, the Connecticut court would, we think, look next to see whether the risk of this type of accident was foreseeable in such a sense as to make it fair to charge the Government for responsibility. *See* 5 Harper, James & Gray, *supra,* § 26.7, at 26–31; *cf. Stulginski v. Waterbury Rolling Mills Co.,* 124 Conn. 355, 365, 199 A. 653, 658 (1938) (fight between employees found incidental to employment as it was a "natural consequence of the conditions of employment"); *Saba v. Pioneer Contracting Co.,* 103 Conn. 559, 564, 131 A. 394, 395 (1925) (employee's falling off truck on way to work found to be an incidental risk of employment as it was "contemplated by [the] employers"). We agree with the leading text, as did Judge Friendly in *Ira S. Bushey & Sons, Inc.,* 398 F.2d at 171–72, that what is reasonably foreseeable in the context of respondeat superior is quite a different thing from the foreseeably unreasonable risk of harm that spells negligence, *see* 5 Harper, James & Gray, *supra,* § 26.7, at 27. When

we talk of vicarious liability we are not looking for the employer's fault but rather for "risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken." *Id.* In this sense, "fairness probably cannot be altogether divorced from some kind of foreseeability." *Id.* We should, however, look to the "broad scope of a whole enterprise," including both its "more or less inevitable toll" and the harm that is likely to flow from the employer's activity despite the reasonable precautions that might be taken. *Id.* at 28.

Can we then, in Judge Friendly's words "readily think of cases that fall on the other side of the line"? *Ira S. Bushey & Sons, Inc.,* 398 F.2d at 172. Judge Friendly thought of the seaman setting fire to the bar where he had been imbibing or causing an accident on the street while returning to his ship; he suggested that the Government clearly would not be liable because the activities of the enterprise "do not reach into areas where the servant does not create risks different from those attendant on the activities of the community in general." 398 F.2d at 172. We do not believe that it was in this sense "foreseeable" that Hull would spend eight or nine hours in bars sipping one drink after another, even if the Government could have foreseen that staring at motel walls, as Hull testified he had done for a couple of months, might bore him to a considerable degree and even perhaps cause him to imbibe too much at a given point. At the very least the Government could not foresee that he would be driving one of the vehicles provided eight or nine hours after the end of the work day and five or six hours before the start of another in a condition that barely enables him even to remember hitting a motorcyclist. At least this was not a risk of the enterprise any different from "those attendant on the activities of the community in general." This is not to say that the Government might not have been liable for Hull's backing into a pedestrian on the motel premises once he returned there, just as in *Ira S. Bushey & Sons* the court imposed vicarious liability on the seaman's

employer for the employee's turning water intake valves at the drydock where his ship was berthed. In the end, we draw the line as we think the Connecticut court would draw it, along the same path drawn by Judge Clarie, to whose expertise in Connecticut law we certainly give due deference.

The narrower argument made by Hull is that because he was returning to the motel at the time of the accident (even though he missed the turn that would have taken him more directly to the motel) he had reentered the scope of his employment within *Kuharski v. Somers Motor Lines*, 132 Conn. 269, 274, 43 A.2d 777, 779 (1945), or *Mastrilli v. Herz*, 100 Conn. at 705, 124 A. at 836 (when employee has accomplished his own purpose he is engaged in employer's business within the scope of his employment when returning the vehicle to the place to which he was expressly or impliedly directed to return it). Here, Hull was trying to get back to his motel in order to return the vehicle to the parking lot so that others could use it and to get some sleep before attending class the next day. The *Restatement (Second) of Agency* § 237 states that "[a] servant who has temporarily departed in space or time from the scope of employment does not re-enter it until he is again reasonably near the authorized space and time limits and is acting with the intention of serving his master's business." Both time and place are, however, matters of degree, *see id.* § 233 comment b, § 234 comment c. In this case, although it might be found that despite the misturn, Hull was reasonably near the motel so as to warrant a finding of liability, certainly when the factor of time is also taken into account he could not be said to have yet resumed being within the scope of his employment. *See generally* 5 Harper, James & Gray, *supra*, § 26.8, at 44–45 & n. 21. We take note of the proposition that a driver might become "so intoxicated as to preclude the formation of any intention to return to his business duties," *Caldwell v. Adams*, 51 Tenn.App. 373, 367 S.W.2d 804, 808 (1962), and though it would not appear that this

was the case with Hull, he did testify that he was at least not consciously returning to serve his employer. Although we cannot say that as a matter of law Hull was outside the scope of his employment at the place and time of the accident, *cf. McConville v. United States*, 197 F.2d 680, 684 (2d Cir.), *cert. denied*, 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952), we do think that Judge Clarie's holding implicitly relies on the premise, as a mixed conclusion of law and fact, that Hull was not at a sufficient point of return so as to be within the scope of his employment. Such a mixed conclusion of law and fact is generally reviewable as a matter of law, *see Karavos Compania Naviera S.A. v. Atlantica Export Corp.*, 588 F.2d 1, 7–8 (2d Cir.1978), although the conclusion of the district court " 'will ordinarily stand unless the [court] manifests an incorrect conception of the applicable law,' " *id.* at 8 (quoting *Cleary v. United States Lines Co.*, 411 F.2d 1009, 1010 (2d Cir.1969)). After carefully reviewing the record and the applicable law, we are satisfied that Judge Clarie did not err in concluding that Hull had not yet reentered the scope of his employment.

Judgment affirmed.