Janet H. McHUGH

v.

UNIVERSITY OF VERMONT, Christopher Wheeler, and James P. Alexander.

Civ. A. No. 90–174.

United States District Court, D. Vermont.

Feb. 5, 1991.

Michael J. Gannon, Pierson, Wadhams, Quinn & Yates, Burlington, Vt., for plaintiff.

Robert L. Sand, Dinse, Erdmann & Clapp, Burlington, Vt., and Francine Bazluke, Associate Gen. Counsel, University of Vermont, Burlington, Vt., for defendant, University of Vermont.

Helen M. Toor, Asst. U.S. Atty., Burlington, Vt., for defendants Christopher Wheeler and James P. Alexander.

## OPINION AND ORDER

PARKER, District Judge.

### PROCEDURAL BACKGROUND

Plaintiff's initial complaint, filed in state court on June 12, 1990, contained four counts alleging sexual harassment by the University of Vermont (hereinafter "UVM") and the two individual defendants. Count I alleges a violation of the Vermont Fair Employment Practices Act by virtue of unfair sexual and religious discrimination in the workplace, a retaliatory discharge and an improper unfavorable evaluation. In count II, plaintiff alleges that defendants' conduct was so outrageous in character and so extreme in degree as to constitute intentional infliction of emotional distress. The third cause of action alleges violations of state and federal constitutional privacy rights as well as substantive and procedural due process rights. The fourth count alleges that defendants breached an implied covenant of good faith and fair dealing in employment. Each of the four counts is asserted against all three defendants. UVM removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441–52 and Fed.R.Civ.P. 81(c). The two individual defendants, Wheeler and Alexander, have moved to dismiss counts I, III and IV for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). They also moved to substitute the United States as the defendant in count II and then to dismiss that count against the United States.[1] A hearing on the motions was held on November 14, 1990.

The standard for dismissal of a claim under Rule 12(b)(6) is that it must be apparent that plaintiff is unable to prove any set of facts which would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In making this determination, the court must accept the plaintiff's allegations to be true and view them in the light most favorable

---

1. On November 12, 1990, while the motion to dismiss by the individual defendants was pending, plaintiff moved to amend her complaint. The motion to amend is unopposed by the government, and is hereby granted. Since the first four counts of the amended complaint are virtually identical to the original complaint, this Court will treat the previously filed motion to dismiss as a motion to dismiss the amended complaint's first four counts.

to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Applying those standards, the Court grants the individual defendants' motion to dismiss as to the first and third causes of action. The Court grants defendant Alexander's motions to substitute the United States as defendant, to dismiss count II and to dismiss count IV. The Court denies defendant Wheeler's motion to substitute the United States as defendant and thereafter to dismiss count II and his motion to dismiss count IV.

## FACTS

Taking the facts as alleged in the complaint, in the light most favorable to plaintiff, as we must do for purposes of the pending motion, they are as follows. Plaintiff was an employee of UVM working in the Military Studies Department as a Secretary III. Her co-worker, Major (now Lt. Colonel) Christopher Wheeler harassed her on account of her sex and her religion. Wheeler's conduct created a hostile work environment that caused her emotional and physical harm. Furthermore, Wheeler joked about plaintiff's contracting AIDS, stating that he hoped she would be able to avoid infection over the summer while he was away, and he repeatedly suggested that plaintiff must be living with someone. He told Ms. McHugh that his definition of a "secretary" was a paid whore and he said to plaintiff, it's "a good day to watch Catholic babies burn." Amended Complaint ¶ 6.

Plaintiff complained to her supervisor, Lt. Colonel James P. Alexander, about Wheeler's behavior. After hearing McHugh's grievances, defendant Alexander fired her on July 17, 1987. Plaintiff contends that Alexander sought to deprive plaintiff of her institutional remedies by unilaterally extending her four month probationary period before firing her. In an intramural hearing at UVM, the hearing officer found evidence of a retaliatory firing, but he did not find that Wheeler and Alexander had discriminated against Ms. McHugh. UVM agreed to rehire plaintiff, but she was not rehired until February 1988. Plaintiff received favorable evaluations in her new position in the Pharmacol-ogy Department until her supervisor learned that she was to be a possible witness in a claim by another employee against UVM, whereupon she was given an unfavorable recommendation. Plaintiff's resulting physical and emotional trauma from her treatment at UVM caused her to leave her job in the Pharmacology Department in late May of 1988.

## DISCUSSION

### I. VERMONT FAIR EMPLOYMENT PRACTICES ACT

Plaintiff alleges that defendants discriminated against her because of her sex and her religion, that her dismissal was a retaliatory discharge, and that she was given an improper unfavorable evaluation, all of which were unfair employment practices under Vt.Stat.Ann. tit. 21, § 495(a)(1), (a)(5) and (b) (1987). Plaintiff alleges that the individual defendants Wheeler and Alexander were "employers" within the meaning of Vt.Stat.Ann. tit. 21, § 495d(1). We rule as a matter of law that they were not.

The Vermont Fair Employment Practices Act (hereinafter "FEPA") makes it unlawful "[f]or any employer, employment agency or labor organization to discriminate against any individual because of his race, color, religion, ancestry, national origin, sex, place of birth, or age or against a qualified handicapped individual." Vt.Stat. Ann. tit. 21, § 495(a)(1) (1987). FEPA defines "employer" as:

> any individual, organization, or governmental body including any partnership, association, trustee, estate, corporation, joint stock company, insurance company, or legal representative, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, and any common carrier by mail, motor, water, air or express company doing business in or operating within this state, which has one or more individuals performing services for it within this state.

Vt.Stat.Ann. tit. 21, § 495d(1) (1987). The act provides for private enforcement, authorizing an aggrieved person to bring an action in superior court "seeking damages

or equitable relief, including restraint of prohibited acts, restitution of wages or other benefits, reinstatement, costs, reasonable attorney's fees and other appropriate relief." Vt.Stat.Ann. tit. 21, § 495b(b) (1987). These remedies are available only against employers, employment agencies or labor organizations. There is no Vermont case law addressing the scope of the term "employer." As this Court has noted, however, the Vermont statute "is patterned after title VII of the Civil Rights Act of 1964 ... and the standards and burdens of proof to be applied to an FEP case are identical to those for a title VII case." *Sprague v. University of Vermont*, 661 F.Supp. 1132, 1140 (D.Vt.1987) (Billings, J.) (citing *Cobb v. Dufresne–Henry, Inc.*, 603 F.Supp. 1048, 1053 (D.Vt.1985)). *See also State v. Whitingham School Board*, 140 Vt. 405, 407, 438 A.2d 394, 396 (1981).

 Title VII defines "employer" as: a person engaged in an industry affecting commerce who has fifteen or more employees for each working day on each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....

42 U.S.C.A. § 2000e(b) (West 1981). Plaintiff argues, and this Court agrees, that under both FEPA and Title VII, an employer may be an "individual." Although Alexander and Wheeler are "individuals," they were not Ms. McHugh's employer(s). Plaintiff was an employee of UVM. The individual defendants were two active-duty members of the Department of the Army who were assigned by the Army to the Reserve Officers' Training Corps ("ROTC") Program at UVM, also known as the Military Studies Department. *See* 32 C.F.R. §§ 562.3(k), 562.7(a)(4)(i) and 562.7(a)(6)(ii) (1989). Hence, defendants were employees of the federal government.

Cases holding that individual employees or supervisors may be liable under Title VII are inapposite. Those cases turn on the Title VII definition of "employer" as including "any agent of such a person." 42 U.S.C.A. § 2000e(b) (West 1981). *See Goodman v. Board of Trustees of Community College Dist. 524*, 498 F.Supp. 1329, 1332 (N.D.Ill.1980) (citing the statutory language "any agent of such a person"); *Dague v. Riverdale Athletic Ass'n.*, 99 F.R.D. 325, 327 (N.D.Ga.1983) (officers of an employer should be treated in the same fashion as "agents, who are clearly subject to liability under the Act"). The Vermont FEPA definition of "employer" does not include the Title VII language of "any agent of such a person." *See State of Vermont v. R.S.D. Leasing, Inc.*, No. S822–86 CnC, slip op. at 4–5 (Chittenden Super.Ct., April 28, 1988) ("Vermont's statute does not include this 'agent of employer' language or concept."); *Richerson v. Jones*, 551 F.2d 918, 928 (3d Cir.1977) (where a statute "contains a given provision, the omission of such provision from a similar statute is significant to show a different intent existed").

 Nor does FEPA's "legal representative" language provide any assistance to plaintiff in this case. Even if we were to construe the term "legal representative" to mean "agent" (which we specifically do not), Wheeler and Alexander were employees of the United States government. As such, they certainly were not "agents" of UVM and accordingly did not come within any definition of plaintiff's employer.

For the foregoing reasons, plaintiff's claims against the individual defendants of violations of the Vermont Fair Employment Practices Act are dismissed for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 Plaintiff's second cause of action is a tort claim—intentional infliction of emotional distress. Vermont recognizes a cause of action for intentional infliction of emotional distress without a showing of physical touching. There are four elements necessary to establish a prima facie case: "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Sheltra v.*

*Smith,* 136 Vt. 472, 475–76, 392 A.2d 431, 432–33 (1978); *see also Crump v. P & C Food Markets, Inc.,* —— Vt. ——, 576 A.2d 441, 448 (1990).

Plaintiff's complaint alleges all of the elements necessary to make out the cause of action. However, defendants move to substitute the United States as defendant for Wheeler and Alexander under the Federal Tort Claims Act (hereinafter "FTCA") and then dismiss the claim against the United States for failure to file an administrative claim as is required under FTCA. Under FTCA, the federal district courts have exclusive jurisdiction over civil actions "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C.A. § 1346(b) (West 1976). Such a remedy lies only against the United States for actions by its employees and is exclusive of any other civil action. 28 U.S.C.A. § 2679(b)(1) (West Supp.1990). FTCA provides that substitution of the United States for an individual defendant is automatic once the Attorney General certifies that an individual defendant was acting within the scope of his or her employment. 28 U.S.C.A. § 2679(d)(1) (West Supp.1990). In this case, the Attorney General (through a United States Attorney acting as his delegate) has certified that the individual defendants were acting within the scope of their employment at the "time of the incidents" stated in the complaint. Certification by Acting United States Attorney Charles A. Caruso, August 22, 1990.

■ Whether certification by the Attorney General that a defendant is acting within the scope of his employment is judicially reviewable is unsettled law.[2] The Second Circuit has not yet considered the issue. *Egan by Egan v. United States,* 732 F.Supp. 1248, 1251 (E.D.N.Y.1990). This Court, believes that the reasoning and the holding of *Petrousky v. United States,* 728 F.Supp. 890 (N.D.N.Y.1990), are sound. In that case, the government stated that in view of new Justice Department guidelines, the government's position was no longer that the court was precluded from reviewing scope of employment certification. Instead, the court could review certification, but the government was entitled to deference. The court went on to explain why such a position was constitutionally infirm. First, since plaintiff had a property interest in the lawsuit against the defendants, unreviewable certification amounts to a deprivation of due process because the statute provided no opportunity for the plaintiff to be heard on the scope of employment issue. *Id.* at 893. Second, the certification process allows the government to impermissibly combine investigatory and adjudicative functions. This creates the appearance of bias that is also suspect for due process purposes. *Id.* at 894. Since 28 C.F.R. § 15.3 (1990) allows the Attorney General to delegate to the United States Attorney the authority to certify scope of employment, a United States Attorney is in the position of deciding a case in favor of the side which he or she represents, creating an impermissible appearance of bias. In fact, certification in an action against a federal official alleging libel, slander or defamation leaves a plaintiff with absolutely no remedy because under FTCA, which provides the exclusive remedy for all tort claims against federal employees, such a claim is precluded.[3] To avoid these constitutional problems, the *Petrousky* court reviewed the certification of scope of employment *de novo.* Following *Petrousky,* this Court believes that it has an obligation to

**2.** Both the plaintiff and the defendants cite 28 U.S.C. § 2679(d)(2) in connection with their arguments. Section 2679(d)(1) provides for substitution of the United States as defendant after certification by the Attorney General in cases already in federal court. Subsection (d)(2) provides for substitution of the United States after certification by the Attorney General in a civil action commenced in state court and states that "certification ... shall conclusively establish scope of office or employment for purposes of removal." In the instant case, removal was not by the United States after certification, but by UVM. Hence, this Court finds that subsection (d)(1) applies and is reviewing the Attorney General's scope of employment certification under that subsection.

**3.** 28 U.S.C.A. § 2680(h) (West Supp.1990).

make its own determination whether the individuals were acting within the scope of their employment and will do so.

Under the FTCA, "the issue of whether an employee was acting within the scope of his employment is governed by the law of the state in which the negligent or wrongful conduct occurred." H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 5, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5945, 5949 (citing *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955)); *see also Cronin v. Hertz Corp.*, 818 F.2d 1064, 1065 (2d Cir.1987); *Petrousky v. United States*, 728 F.Supp. at 896. The scope of employment issue is one of law. *Arbour v. Jenkins*, 903 F.2d 416 (6th Cir.1990); *Levin v. Taylor*, 464 F.2d 770 (D.C.Cir.1972); *Nietert v. Overby*, 816 F.2d 1464, 1466 (10th Cir.1987).

■ The law of the State of Vermont regarding scope of employment follows the so-called modern view; that is, the inquiry turns not on whether the act done was authorized or was in violation of the employer's policies, but rather whether the acts can properly be seen as intending to advance the employer's interests. In *Anderson v. Toombs*, 119 Vt. 40, 45, 117 A.2d 250, 253 (1955), the Vermont Supreme Court stated that in order to hold the employer responsible for the employee's acts it must be shown that "the act was done in furtherance of the master's business and within the scope of the servant's employment." The Court cited the Restatement of the Law of Agency, § 235: "An act of a servant is not within the scope of employment if it is done with no intention to perform it as part of or incidental to a service on account of which he is employed." 119 Vt. at 46, 117 A.2d at 254.[4] Moreover, a recent opinion by Vermont Superior Court Judge Matthew Katz held that traditional tort standards should be applied when determining vicarious liability of an employer for sexual discrimination of the hostile environment type in violation of Vermont's FEPA. According to Judge Katz, "[s]exual harassment, for the pur-

pose of satisfying the employee's sexual proclivities, must fall into [a] category [where vicarious liability should not attach]." *State of Vermont v. R.S.D. Leasing, Inc.*, No. S822–86 CnC, slip op. at 8 (Chittenden Super.Ct., April 28, 1988).

■ The complaint alleges that Major Wheeler worked as a co-worker and/or immediate supervisor of plaintiff in the Military Studies Department at UVM. Lt. Colonel Alexander is alleged to have been Major Wheeler's supervisor and had the authority as a part of his job to discharge the plaintiff, which he did in this case. All of the activities relevant here took place in the workplace during work hours. This, however, does not end the inquiry.

How could it possibly further the interests of the United States Government to have a male supervisor tell a female co-worker or subordinate employee that secretaries are "paid whores" as the defendant is alleged to have done in this complaint? Complaint ¶¶ 6–7. We hold that the defendant Wheeler was acting on his own, against the interests of his employer while engaged in the specific acts of sexual harassment as alleged in the complaint and, accordingly, deny defendant Wheeler's motion to substitute the United States and to dismiss that count.

■ As to defendant Alexander's retaliatory discharge, however, the facts relevant to the scope of employment analysis are quite different. The actions as alleged are wrongful and reprehensible. However, responding to an employee's complaint about working conditions and taking action in response are part of the job of being a supervisor. Wrongful as his actions are alleged to have been, Alexander was acting within the scope of his employment and plaintiff's exclusive remedy lies within FTCA. Accordingly, we grant defendant Alexander's motion to substitute the United States as the defendant in count II pursuant to the FTCA. 28 U.S.C.A. § 2679(d)(1) (West Supp.1990).

---

**4.** The Second Restatement of the Law of Agency is the same as the First Restatement in this section. Restatement (Second) of Agency § 235 (1957).

Once the United States is substituted as defendant, this cause of action must be dismissed because plaintiff has failed to satisfy the procedural requirements of 28 U.S.C.A. §§ 2401(b), 2675 (1978 & West Supp.1990). Section 2401(b) states that "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years." Section 2675 precludes the filing of a lawsuit "unless the claimant shall have first presented the claim to the appropriate federal agency." Second Circuit case law holds that § 2675 includes the requirement that "the request for damages in any administrative claim state a sum certain." *Adams v. United States Dept. of Housing & Urban Dev.*, 807 F.2d 318, 320 (2d Cir.1986). The "sum certain" requirement "is jurisdictional and cannot be waived." *Id.* at 321. *See also* 28 C.F.R. § 14.2(a) (1990). At the latest, plaintiff's claim against the individual defendants accrued when she was terminated from the Military Studies Department on July 17, 1987. Plaintiff has failed to file any administrative claim.[5] This Court therefore dismisses count II of the complaint as it relates to defendant Alexander.

## III. CONSTITUTIONAL CLAIMS

Plaintiff alleges that defendants' conduct violated her rights to privacy and substantive and procedural due process under both the federal and state constitutions. In certain situations a cause of action for money damages arises directly under the Constitution. *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (implied right of action under Fourth Amendment for damages against federal officers); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (aide could sue congressman for gender discrimination based on a cause of action inferred directly from the Fifth Amendment).

Regardless of the availability of a *Bivens* cause of action, plaintiff is unable to overcome defendants' qualified immunity. After *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the test for qualified immunity is objective:

[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. *See also Fox v. Coughlin*, 893 F.2d 475, 477 (2d Cir. 1990). The question of "whether a right is clearly established is one of law." *Yalkut v. Gemignani*, 873 F.2d 31, 35 (2d Cir. 1989). The Second Circuit explained:

[T]he boundaries of the supposed "right" must be sufficiently definite so that the official understood that his actions violated it or, in other words, that the unlawfulness of his actions was evident.

*Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir.1988). *See also Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). Vermont has adopted the *Harlow* objective standard for qualified immunity. *Levinsky v. Diamond*, 151 Vt. 178, 190, 559 A.2d 1073, 1081 (1989).

Whether or not claims of sexual harassment amount to violations of a constitutional right to privacy is unsettled. In *Otto v. Heckler*, 781 F.2d 754 (9th Cir.1986), the plaintiff argued that her supervisor violated her right of privacy by making defamatory remarks about her sexuality, by following her, telephoning her and placing her in fear of sexual abuse. *Id.* at 757. The Ninth Circuit held that "[s]uch facts do not constitute an invasion of the constitutional right of privacy, but rather sound in tort. Her supervisor's conduct does not amount to a governmental intrusion into the intimacies of married life." *Id.* at 757 (citing *Griswold v. Connecticut*, 381 U.S. 479, 485–86, 85 S.Ct. 1678, 1682–83, 14 L.Ed.2d 510 (1965)). *See also Garcia v. Williams*, 704 F.Supp. 984, 992 (N.D.Cal.1988) (federal judge's former secretary's claims of sexual harassment and wrongful discharge did

---

**5.** McHugh's two letters to Colonel Snodgrass on July 30, 1987 and August 5, 1987 fail to state a sum certain and therefore do not fulfill the administrative requirements for a "claim."

not rise to level of a constitutional violation; plaintiff's allegations regarding nonsexual matters, such as intrusion on plaintiff's religious beliefs, do not support plaintiff's privacy claim). While the Ninth Circuit has ruled that sexual harassment does not amount to a constitutional violation of the right to privacy, the Second Circuit has not reached this issue.

This Court, however, need not reach this constitutional issue. *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979) (federal courts have duty to avoid constitutional issues that need not be resolved in order to determine rights of parties before them). We hold only that at this time, there is no "clearly established ... constitutional right" of privacy to be free from sexual harassment. Defendants Alexander and Wheeler are therefore immune from liability for conduct that may or may not have violated a constitutional right.

Under Vermont law, Ms. McHugh has no privacy claim. The Vermont Supreme Court has held that the Vermont Due Process clause does not "rise to the level of establishing a fundamental privacy right." *Levinsky v. Diamond*, 151 Vt. 178, 197, 559 A.2d 1073, 1086 (1989).

With regard to plaintiff's due process claims, UVM is the only proper defendant to this claim. To assert a due process violation, plaintiff must demonstrate that she has a constitutionally protected property interest in the position from which she was terminated. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1971). Plaintiff would have had a property interest in continued employment if she had "legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Plaintiff alleges that her probationary status was impermissibly extended. In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court held that property rights included not merely contractual or statutory rights to continued employment but rights acquired under a *"de facto* tenure program," resulting from "the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment." *Id.* at 600, 92 S.Ct. at 2699. Whether plaintiff has a legitimate claim of entitlement to continued employment is a disputed question between plaintiff and UVM, her employer. Count III is dismissed as to the two individual defendants.

## IV. BREACH OF IMPLIED COVENANT TO DEAL FAIRLY AND IN GOOD FAITH

Plaintiff contends that defendants impliedly covenanted to deal fairly and in good faith with the plaintiff and that their conduct violated an implied covenant. Plaintiff's possible cause of action here lies either in contract or tort, or both.

On a contract theory, plaintiff fails. Under Vermont law, an "implied covenant of good faith and fair dealing prevails in every contract." *Shaw v. E.I. DuPont de Nemours and Co.*, 126 Vt. 206, 209, 226 A.2d 903, 906 (1967). While Vermont recognizes a cause of action for breach of implied covenant to deal fairly where there *is* a contract, other courts have held that "[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffmann–La Roche Inc.*, 238 N.J. Super. 430, 434, 570 A.2d 12, 14 (1990). There was no contract between Ms. McHugh and either Lt. Colonel Alexander or Major Wheeler and therefore, she has no cause of action in contract.

Alternatively, plaintiff may be proceeding on a tort claim. In *Lyon v. Bennington College Corp.*, 137 Vt. 135, 139, 400 A.2d 1010, 1012 (1979), the Vermont Supreme Court held that a faculty member's claim against officers of a college for inducing the college to break its contract constituted a tort claim. Although plaintiff does not clearly set out a tort claim in Count IV of the complaint, it is possible to

construe the allegations as stating a claim of intentional interference with a contractual relationship, namely, plaintiff's employment arrangement with UVM. Since we have earlier held that defendant Wheeler was not acting within the scope of his employment when doing the acts alleged in this complaint, we believe that a common law claim of interference will lie and hold that the allegations are sufficient to withstand the motion to dismiss. Wheeler's motion to dismiss count IV is denied.

Since this Court finds that Alexander was acting within the scope of his employment, the United States must be substituted as defendant under FTCA. Count IV must then be dismissed against the United States due to plaintiff's failure to follow proper procedures under FTCA as explained above in the discussion of count II.

## V. CONCLUSION

In sum, the individual defendants' motion to dismiss the Vermont Fair Employment Practices Act claim and the constitutional claims is GRANTED. Defendant Alexander's motion to dismiss the intentional infliction of emotional distress claim and the implied covenant of good faith claim is GRANTED. Defendant Wheeler's motion to dismiss both the intentional infliction of emotional distress claim and the implied covenant of good faith claim is DENIED. Plaintiff is directed to file a substituted complaint in light of this Opinion and Order.

Because a federal constitutional claim remains pending against defendant UVM, this Court retains jurisdiction of all remaining matters.